CASE 28—PETITION ORDINARY—MARCH 22.

# Pursifull v. Pineville Banking Company.

APPEAL FROM BELL CIRCUIT COURT.

BANKS—RELEASE OF SURETY.—Where, at the maturity of a negotiable note, the bank at which it is made payable and to which it has been discounted has on general deposit for the principal in the note a sum more than sufficient for its payment, and instead of applying from this unappropriated deposit a sum sufficient to pay the note permits the entire deposit to be checked out, for other purposes, by the principal, who afterward becomes insolvent, a surety in the note is thereby discharged from liability.

W. J. WELLER AND N. B. HAYS FOR APPELLANT.

The bank had a lien upon the deposit of the principal to pay the debt, and by surrendering that security it released the surety. (Morse on Banks and Banking, sections 562, 563; Faulkner v. Cumberland Valley Bank, 14 Ky. Law Rep.,923.)

The case of Second National Bank of Lafayette v. Hill, 76 Ind., 223, distinguished.

WARREN MONTFORT FOR APPELLEE.

The surety was not released by the failure of the bank to apply the principal's deposit to the payment of the debt. (National Bank Mahaiwe v. Peck, 127 Mass., 302; Bank U. S. v. Carneal, 2 Pet.,

543; Second Nat'l Bank of Lafayette v. Hill, 76 Ind., 223; Morse on Banks and Banking, sections 557 (b), 563.)

JUDGE EASTIN DELIVERED THE OPINION OF THE COURT.

This action was brought December 12, 1893, in the Bell Circuit Court, by appellee, as assignee of the Pineville Banking Company, against appellant and one Hurst, on a note executed by them December 23, 1889, and payable thirty days thereafter to the order of said banking company, and negotiable and payable at said bank. This note was discounted at and was held and owned by said bank at the time of its maturity, January 23, 1890.

Appellant filed an answer in the court below, in which he alleged, among other things, that he was merely a surety and that his co-defendant, Hurst, was the principal in said note, and that these facts, as well as the fact that he had received no part of the proceeds of said discount, were well known to the bank at the time. Said answer further alleges that, at the time said note matured, and prior thereto, and for some time thereafter, the principal therein was a depositor with, and had to his credit as a general deposit in said bank a large sum of money, much more than sufficient to pay said note, that the bank had a lien thereon for the payment of said note, but without the knowledge or consent of appellant released its said lien and permitted Hurst, the principal in said note, to withdraw the whole of said deposit, leaving the note unpaid; that it did not, at the maturity of said note, or at any other time, notify appellant that the note was unpaid, and that he, knowing that Hurst had this large deposit in the bank at and after the maturity of the note, supposed it had been paid until this suit was brought against him thereon nearly four years thereafter. The answer further alleges that Hurst has, in the mean-

time, become and is wholly insolvent, and that, if he shall be compelled to pay said note by reason of the bank having released its lien on said deposit, he will now be entirely without remedy against his principal.

To this answer appellee filed a general demurrer, which was sustained by the court, and thereupon, at the same term of court, appellant offered to file and tendered an amended answer in which, after reiterating the statements of his original answer, he also charges that this note, being made negotiable and payable at the bank, was, in effect, an order from Hurst on said bank to appropriate and apply from his deposit therein a sufficient sum to pay the note at maturity; that the bank was thereby made his agent to pay the same, and that, by the negligence of said bank, this application was not made, and the note not paid. It further pleads and relies upon the failure of the bank to apply to the payment of the note other deposits made by Hurst after the maturity of the note and when his insolvency was known to the bank.

To the filing of this amended answer appellee objected and insisted on his demurrer to the answer as offered to be amended, and the court sustained the objection and refused to allow the amended answer to be filed. Appellant declined to plead further, the petition was taken for confessed, a judgment for the amount of the note and interest was entered against him, and from that judgment he prosecutes this appeal.

In view of this statement from the record, and of the action of the court below in sustaining the demurrer to the original answer and refusing to allow the amended answer to be filed, we think there is but one question to be considered by this court.

That question is, whether or not, in this State, the surety,

on a negotiable note, made payable at, and discounted to and owned by, a bank which holds, on general deposit for the principal in the note, at the maturity thereof, a sum more than sufficient to pay the same, is discharged from liability thereon, by reason of the failure of such bank to apply to the payment of the note a sufficient sum from this unappropriated deposit, and by reason of its permitting the entire deposit to be checked out, for other purposes, by the principal who afterwards becomes insolvent?

This question has never been settled by any adjudication of this court, and we are aware that the decisions of the courts of other States are not in entire harmony, and that there is some contrariety of opinion among the text writers on the subject.

In considering the proposition, it is well for us to remember that this bank was the absolute *owner* of this note and not a mere collecting agent to look after the proper presentment of the note, and to demand payment in behalf of another. The bank was the creditor of Hurst, the principal in the note, to the amount thereof, and was his debtor in the amount of the deposit then standing to Hurst's credit in the bank.

As to the *right* of the bank, under the doctrine of set off, to have applied, to the payment of this note, from Hurst's unappropriated deposit, enough money to pay the same, by simply charging the note to his account, there seems to be no difference of opinion, and it is only as to the *duty* of the bank in this respect, as between it and the surety on the note, that the authorities differ.

As to this, Mr. Morse, in his text book, says: "If a note payable at a bank is sent there for collection, and the bank fails to apply an unappropriated deposit of the maker to its payment, the indorser is discharged. When a creditor

has within his control the means of paying the debt out of property of the debtor properly applicable to the purpose, and does not use the opportunity, but gives up the property, the surety is discharged. (2 Morse on Banks and Banking, 3d edition, sec. 562.)

A similar doctrine is laid down in some of the decisions of the State courts, particularly in the cases from Pennsylvania, in one of which the learned judge, after referring to the well-recognized principles that the relation between the bank and its depositor is simply one of debtor and creditor, and that the bank has the right to apply an unappropriated general deposit to the payment of a matured note held by it against its depositor, which right it may waive unless the rights of third parties have intervened, propounds the following query which seems to us very aptly to illustrate the situation in this case, to-wit:

"If I am the holder of A's note indorsed by C, and when the note matures I am indebted to A in an amount equal to or exceeding the note, can I have the note protested and hold C as indorser? It is true A's note is not technically paid, but the right to set-off exists, and surely C may show, in relief of his obligation as surety, that I am really the debtor instead of the creditor of A. If this is so between individuals, why is it not so between a bank and individuals?" (Commercial Nat'l Bank v. Henninger, 105 Pa. St. Rep. 502.)

Counsel for appellee, however, in support of their contention, that the conduct of the bank in this case, as set forth in the answer and admitted by the demurrer, did not operate as a discharge of the surety, rely mainly upon the cases of National Bank v. Peck, 127 Mass., 302, and Second National Bank v. Hill, 76 Ind. 223.

As to the former, the case from Massachusetts, it is suffi-

cient to say that it is clearly distinguishable from this case. There the bank held two notes of B, one of which was executed by him in his official capacity, as treasurer of a town, and the other was executed by him individually. B kept only a personal account with the bank. The note executed by him in his official capacity was indorsed by P who, a few days after the maturity of that note, presented to the bank the check of B on his individual account and demanded that it be applied to the payment of the official note on which P was indorser. To this demand the bank answered that it had already applied B's deposit toward the payment of his individual note, which had also matured, though not until after the maturity of the official note. In the action which was brought against P by the bank to enforce the collection of this official note which he had endorsed, it was shown that neither this note nor its proceeds ever went into or constituted any part of B's personal account in the bank, and it was accordingly held that the bank, as against the surety on this official note, had the right to charge up B's personal note, which had also matured, against his personal account, as it had already done before this demand was made upon it to pay the official note out of this account. The distinction between that case and this is apparent.

The case in 76 Indiana, *supra,* relied on by counsel for appellee, does fully support the position for which they contend.

But, in that case it is also held, in conformity with the well-settled doctrine on the subject, that a bank has the right, under the state of facts admitted in this case, to apply the deposit to the payment of its demand, if it chooses to do so. It is furthermore held in that case that a creditor may not release a collateral security given by the prin-

cipal debtor, or a lien which it may hold on his property, without discharging the surety, and these propositions are, we believe, recognized as fundamental in all the cases. If the security be in the nature of a lien by pledge of collateral, or by mortgage, or under an execution against the principal debtor's property, then, in any such case, it would be admitted that a release by the creditor of such security would discharge the surety to the extent, at least, of the value of the security so surrendered.

Now, while it is true that the bank in this case had not, strictly speaking, a lien upon any money or property belonging to Hurst, and while the surety could not, perhaps, by paying this debt to the bank, have become entitled to demand of it repayment out of Hurst's deposit, which is laid down by some of the authorities as the true test, yet, it seems to us that this bank, by the voluntary surrender to the principal of money more than sufficient to pay this debt, and which it is conceded that it had a right to apply to that purpose, has been equally reckless of the interests of this surety as though it had surrendered a security on which it had a specific lien. As said by the text writer, above quoted from, in criticising this case in 76 Indiana, "If the bank at the maturity of a note held by it holds funds that, by the scratch of a pen, it could apply upon the note, thus securing itself, it is difficult to see why neglecting so easy a means of security is not as improper as giving up collateral expressly designated for the purpose of securing the note." (Morse on Banks and Banking, 3d edition, Vol. 2, sec. 563.)

The right on part of this bank to retain a sufficiency of Hurst's deposit gave it the absolute control of an ample security for the payment of this debt. A lien by pledge could give no higher right to the security than this bank

Pursifull v. Pineville Banking Company.

had. It had the unquestioned right to actually appropriate and apply this money which it owed to Hurst, to the payment of Hurst's debt to it. It matters not whether the right to the security has its origin in the doctrine of set-off or under a pledge as collateral. It is the extent of the right to the security, rather than the source from which that right springs, that should determine the question whether the creditor can voluntarily surrender the security without releasing the surety; and, having had in its hands a fund which it could, by mere exercise of its option to do so, have used for the satisfaction of this debt, and which, we may assume, the dictates of ordinary diligence and of prudent banking would have prompted it to thus use, this bank has, in our judgment, been guilty of bad faith toward the surety who, according to the facts as they are admitted here, knew of this large deposit to the credit of his principal, who received no notice of the non-payment of the note until nearly four years thereafter, and who assumed, as he had a right to do under these circumstances, that the note had been paid at maturity.

If the facts be as alleged in the answer and admitted by the demurrer, and as we are bound, therefore, to assume them to be, this bank has shown such an utter disregard of, and such absolute indifference to, the interests of the surety, as to entitle him to a release from the liability which would have been satisfied by the principal, if the bank had simply chosen to have it satisfied, and had exercised its option in favor of, instead of against, the surety.

Wherefore, the judgment of the lower court sustaining the demurrer to the answer and rendering judgment against appellant is reversed, and the action is remanded for further proceedings consistent with this opinion.