## 𝔚𝔶𝔱𝔥𝔢𝔳𝔦𝔩𝔩𝔢.

### Bacon's Adm'r v. Bacon's Trustees.

June 17, 1897.

Absent : Cardwell, J.

1. Negotiable Paper—*Note payable "on call"—When payable—Presentment to charge endorser—Reasonable time.*—A note or bond payable on demand or on call is payable at once, and interest and the statute of limitations commence to run from its date. But in order to charge the endorser of a negotiable note so payable it must be presented for payment within a reasonable time. What is reasonable time must be determined by the facts of the particular case. No fixed rule can be laid down on the subject.

2. Principal and Surety—*Indulgence to principal.*—In order that a surety may be discharged for indulgence given to the principal, it must be shown, amongst other things, that there was an agreement or promise, upon a valid consideration, to indulge the principal for some definite time, or at least for a time not altogether indefinite. A partial payment by the principal without agreement to extend as to the balance is not sufficient to discharge the surety, though the principal expected that, in consequence of the payment he would not be immediately pressed for the balance, and in fact he was not so pressed.

3. Negotiable Paper—*Balance to credit of maker not sufficient to pay note—Duty of banker.*—If, when a note of which a bank is the holder becomes due and payable, the bank has not sufficient funds to the credit of the maker to satisfy the note, it is not required to appropriate the deposit to the payment of the note, neither is it required to appropriate subsequent deposits in such case to its payment. The authorities are in conflict as to the duty of the banker where there is sufficient on deposit to meet the note.

4. Bankers and Brokers—*Pledge to secure a particular debt—Liability for other claims.*—Where securities are pledged to a banker or broker for the payment of a particular loan or debt, he has no lien upon such securities for a general balance, or for the payment of other claims, in the absence of an agreement between the parties to that effect.

Argued at Richmond.    Decided at Wytheville.

Appeal from a decree of the Chancery Court of the city of Richmond, pronounced May 10, 1895, in a suit in chancery wherein the appellant was the complainant, and the appellees were the defendants.

*Affirmed.*

The opinion states the case.

*Christian & Christian* and *Pleasants & Massie*, for the appellants.

*Coke & Pickrell* and *M. M. Gilliam*, for the appellees.

BUCHANAN, J., deliered the opinion of the court:

One of the questions involved in this appeal is whether the estate of John L. Bacon, deceased, is liable as endorser upon eleven negotiable notes aggregating $28,500, made by the Marshall Manufacturing Co., payable to John L. Bacon, and held by the State Bank of Virginia.    The first of these notes is dated January 25, 1885, and the last one August 12, 1887. Nine of them are payable "on call after date," one "on call," and one "on demand after date."    All are negotiable and payable at the bank.    Bacon died on the 27th day of August, 1887.    The notes were presented to the maker on December 9, 1889, for payment, and not being paid were protested on that day, and notice thereof given to Bacon's personal representative.    The Chancery Court of the city of Richmond held that payment of the notes was demanded within a reasonable time, and rendered a decree against the estate of the endorser therefor.    From that decree this appeal was taken.

A note or bond payable "on demand" or "on call" (which is the same thing) is payable at once, and interest and the statute of limitations commence to run from its date.    *Watson* v. *Hurt*, 6 Gratt. 633; *Omohundro* v. *Omohundro*, 21 Gratt.

626; *Bowman* v. *McChesney,* 22 Gratt. 609; 1 Daniel on Neg. Inst., sec. 599.

It seems to be settled that a negotiable note payable on demand must be presented for payment within a reasonable time in order to charge the endorser.   In determining what is reasonable time "we are left," says the author of one of the latest and best text books on the subject, "a riddle which is difficult to solve."   1 Daniel on Neg Inst., sec. 604.   What is reasonable time in a particular case depends upon so many circumstances, says Chief Justice Shaw, "that one decision goes but little way in establishing a precedent for another."

In *Morgan* v. *United States,* 113 U. S. 501, Justice Mathews, speaking for the court, said that as to ordinary negotiable paper on demand the length of time within which it would be reasonable to make demand would "vary according to the circumstances of the particular case, and must be governed very largely by the intentions of the parties, as manifested in the character of the paper itself, and the purposes for which it is known to have been created and put in circulation."

Mr. Daniel says:   "When the note payable on demand has been given for a loan of money, it would seem clear that it was intended as a continuing security, and the immediate presentment would not be necessary to charge the endorser.   In Scotland, as well as in the United States, this view has been taken; and though high authority has maintained a different doctrine, we can but regard it as one which strikes the mind with the utmost force."   1 Daniel on Neg. Inst., sec. 607.

Under the facts of this case, were the notes presented for payment within a reasonable time?

The record shows that, at the time these notes were made, Bacon was president of the Marshall Manufacturing Company which made the notes, and also of the State Bank which discounted them, and that he continued to be president of both institutions until his death.   He owned $17,500 of the stock,

and $15,000 of the bonds, of the manufacturing company.
He gave close personal attention to the affairs of the com-
pany, especially to the management of its finances.   The ne-
gotiations with the bank by which the money was borrowed,
and for which the notes were given, were usually conducted
by him.   Generally he would ask the cashier of the bank to
let him (Bacon) have the money, but sometimes he would
hand the notes to the teller without consulting the cashier,
and direct him to place them to the credit of the company.
One of the duties of Bacon as president of the bank was to
supervise all applications made to the bank for loans, and to
approve or disapprove them, and he discharged that duty as
to the notes in question.   The whole amount of each note,
without deducting interest in advance, was, at his request,
placed to the credit of the company, and the interest on the
notes was paid by him with the checks of the company every
six months until his death.   When he died, the indebtedness
of the company to the bank amounted to $33,500, evidenced
by notes, all made between January 24, 1885, and August 12,
1887.   Of the notes in suit six are signed by him as president
of the company.   All of them are made payable to his order
and were endorsed by him for the accommodation of the com-
pany.   During the time the loans were made for which the
notes were given, the company was badly crippled financially,
and the money so obtained was used as its working capital.
Bacon expected the bank to carry the notes until, in the lan-
guage of the cashier of the bank, "it was convenient for the
company to pay them."   It was the habit of the bank, in
making continuing loans, to take demand notes, and of this
habit Bacon, the president of the bank, of course, had notice.
A short time prior to the making of the first of these notes,
the company had given a deed of trust upon all of its prop-
erty, including debts due it, and also upon all property and
effects which it might acquire during the continuance of the
trust, to secure one hundred thousand dollars of the bonds of

the company. Of these bonds, $60,000 had been sold at par, and the proceeds used in improving the cotton mills of the company; $28,000 were deposited with the bank as collateral to secure the notes in controversy; $7,000 to secure another note of $5,000 due from the company, and the remaining $5,000 was held by it.

In the petition for the appeal, and in the notes of argument filed by counsel for appellees, it is insisted that these notes ought to have been presented for payment during the life time of Bacon, in order to charge him or his estate as endorser.

In the oral argument, however, this position was abandoned, and properly so, for under the facts of the case, the bank was not guilty of *laches* in failing to demand payment of the notes in his lifetime.

Five days after Bacon's death, in August, 1887, his widow, who was given a life estate in all of his property, qualified as executrix of his last will and testament, and acted as such until her death in October, 1888. Very soon after her death N. W. Bowe, the present personal representative of Bacon's estate, qualified as such. The company, at the time of Bacon's death, was in no condition to pay its indebtedness to the bank upon which he was endorser, and to have pressed the company then for payment would have seriously injured its credit and interfered with, if not stopped, its business, and thereby injured Bacon's estate which, as above stated, was largely interested both in the stock and bonds of the company, as well as endorser upon its notes. To avoid this result, the bank continued to collect the interest as it had done in Bacon's life time, and required the company to reduce the principal of the indebtedness when it could be done without prejudice to its business. During that period the principal of the debt was reduced several thousand dollars, the interest on all the notes paid, and $5,000 of the $100,000 issue of the bonds, deposited with the bank as additional collateral to secure its payment; the general indebtedness of the company

reduced something over $16,000, and the financial condition of the company improved, or at least kept as good as it was at the time of Bacon's death.

It appears that the successive personal representatives of the estate, immediately after their qualification, respectively, were fully informed of the condition of the debt upon which their testator was endorser and the manner in which the bank had been dealing with it; that they both acquiesced in and approved of that course of management, and co-operated with the bank to save Bacon's estate from loss, which would have resulted, as was thought, from demanding payment of the notes from the company when it was in no condition to make payment.   Bacon was not only endorser upon the notes, but his estate, as we have seen, was largely interested in the Marshall Manufacturing Company, the maker, both as a stockholder and as a holder of its bonds.   In addition, the bank held $28,000 of the bonds of the company as collateral to secure the payment of the notes.   Under these circumstances, the bank being willing, as is clearly shown, to so deal with the notes as to produce the least loss to Bacon's estate, the course pursued was fallen upon and followed until the fall of 1889, when a different course was taken.

The failure of the bank during this time to present the notes for payment was not, in our opinion, such delay as to discharge the estate of the endorser on the notes when all the circumstances of the case are considered, as they must be in determining what is a reasonable time within which to make demand.

It is insisted that Bacon's estate was discharged from liability on the notes by reason of the forbearance of the bank after his death.

In order that a surety or endorser may be discharged for indulgence given the principal debtor it must be shown, among other things, that there was an agreement or promise, upon a valid consideration, to indulge the principal for some defi-

nite time, or at least for a time not altogether indefinite. *Alcock* v. *Hill*, 4 Leigh 622; 2 Daniel on Neg. Inst., sec. 1319; 2 Brandt on Suretyship, &c., sec. 344.

On the 19th of October, 1889, at a meeting of the directors of the Marshall Manufacturing Company, on motion of Mr. Bowe (who was then the administrator of Mr. Bacon, as well as a member of the board of directors of that company), the president of the company was directed as soon as convenient, to pay the bank $2,000 on the debt due it, and also to deposit $5,000 of the bonds of the company with the bank as additional security on the debt. This direction to the president of the company to make the payment and deposit the collateral was absolute, and not made conditional upon the bank giving further time on the debt. The object of the company, which was being pressed for payment, was no doubt to get further time, but when Mr. Bowe communicated the action of the board to the president of the bank it was not favorably received by him, "but was finally accepted," (Mr. Bowe proves) "without any definite promise on his part as to what he might do in the future." While the company or its officials doubtless thought that further time would be given, no such agreement is shown expressly, nor can one be implied merely from the payment on the debt and the deposit of the additional collateral, especially when it appears that they were accepted without any definite promise on the part of the bank, or any promise at all to give time. 1 Brandt on Suretyship, &c., secs. 366, 367; 2 Daniel on Neg. Inst., secs. 1327, 1328.

At the time the notes were protested for non-payment there was on deposit in the bank to the credit of the company (the maker) a sum less than the amount of either of the protested notes, and there were afterwards at various times other sums to the credit of the company, all of which were checked out by the company. The appellants insisted in the trial court that the sum to the credit of the company when the notes

were protested, and also an amount equal to the largest sum to the credit of the company at any subsequent time should be credited upon the notes as against the endorser's estate. This the court refused to direct, and its action is assigned as error here.

Where the maker has a sufficient sum deposited to satisfy the note when it becomes due and payable, there seems to be a conflict among the authorities as to the duty of the bank to charge the note up to the maker as if it were a check upon the deposit, but if, when the note becomes due and payable, the bank has not sufficient funds of the maker to satisfy the debt, it is not required to appropriate the deposit to the payment of the note, neither is it required to appropriate subsequent deposits in such case to its payment. 2 Morse on Banking, sec. 562; 2 Brandt on Suretyship, sec. 432; *Nat. Bank* v. *Smith,* 66 N. Y. 271; *Martin* v. *Bank,* 6 Harris & Johnson, 235; *Commercial Nat. Bank* v. *Henninger,* 105 Penn. St. 496.

In the year 1884, before the loans were made for which these notes were given, the Marshall Manufacturing Company had borrowed from the bank $6,000, and given its note therefor. To secure its payment, Mr. Bacon deposited with the bank sixty-three shares of the stock of the bank, standing in his name, as collateral. This note was renewed from time to time. After it had become reduced to $2,500, Bacon became endorser upon it, and it was paid off in the year 1886, at which time some of the notes in suit were in existence, and upon which Bacon was endorser. The sixty-three shares of stock were allowed to remain with the bank in its collateral box. Afterwards Bacon borrowed money from the bank on his own account, and deposited with the bank other stocks as collateral. The bank seems to have treated the sixty-three shares of Bacon's stock as collateral for any indebtedness of the company upon which Bacon was endorser, or which had been negotiated by him for the company. It appears that it was a habit of

the banks (of the city) when collateral securities were deposited with powers of attorney, as in this case, and not on their face limited to a particular loan, and which are allowed to remain with the bank, to treat the collaterals as security for all loans made to the pledger so long as the collaterals remain in the possession of the bank. It also appears that Bacon knew of this custom or habit, and acted on it as president of the bank as to others. At no time after the collateral was first deposited did the company owe the bank less than $6,000. The commissioner of the court reported that the sixty-three shares of bank stock could not be held by the bank as collateral to secure the notes sued on, but the court was of a different opinion, and so decreed.

Where securities are pledged to a banker or broker for the payment of a particular loan or debt, he has no lien upon such securities for a general balance, or for the payment of other claims, in the absence of an agreement between the parties to that effect. *Loyd* v. *Lynchburg Nat. Bank*, 86 Va. 690; *Reynes* v. *Dumont*, 130 U. S. 354; *Wyckoff* v. *Anthony*, 90 N. Y. 442; 1 Jones on Loans, sec. 251; 1 Morse on Banking, sec. 325.

Whether the facts and circumstances of this case are sufficient to raise such an implied agreement on the part of Bacon, the endorser, as would authorize the bank to hold his stock as collateral to secure the payment of the notes in controversy the judges (four sitting in the case) are equally divided.

It follows from what has been said that the decree complained of must be affirmed.

*Affirmed.*