Argued November 4, decided December 15, 1908, rehearing denied April 27, motion to retax costs allowed April 30, 1909.

**BOOTHE *v.* FARMERS & TRADERS NAT. BANK.**

[98 Pac. 509; 101 Pac. 390.]

TRIAL—FINDINGS—NECESSITY.

1. Where there is no issue as to a particular fact, it is usually unnecessary for any finding to be made in relation thereto.

APPEAL AND ERROR—REFUSAL TO AMEND FINDINGS—HARMLESS ERROR.

2. Refusal to amend the findings so as to conform to the admitted facts is erroneous, unless the finding as made is not detrimental to the party requesting the modification.

BANKS AND BANKING—DEPOSITS—RATIFICATION OF ACT OF CASHIER.

3. A certificate of deposit issued to a depositor was left with the cashier of the bank, who subsequently indorsed thereon the depositor's name, and credited thereon a specified sum as interest, and wrote on the face thereof "Paid. * * " He did not make any memorandum of the transaction on the books of the bank whereby the depositor secured credit therefor. *Held*, that the depositor, by alleging in his complaint, in an action for the balance of his account, that the amount of the certificate and interest had been deposited to his credit, ratified the acts of the cashier, though the same when made were unauthorized.

PLEADING—BANKS AND BANKING—DEPOSITS—ANTICIPATING DEFENSE.

4. A plaintiff, in an action at law, need not anticipate a defense, or allege that either of the notes set forth in the answer as counterclaims were given without consideration.

BANKS AND BANKING—DEPOSITS—ACTIONS—PLEADING.

5. Where, in an action at law to recover deposits in a bank, the answer, by alleging that plaintiff had executed notes to the bank, which were set up as a counterclaim, alleged that the notes were, by virtue of Section 788, subd.

21, B. & C. Comp., supported by a consideration, a reply averring that no consideration for the notes existed presented the issue of consideration.

BANKS AND BANKING—DEPOSITS—ACTIONS—COUNTERCLAIM—EVIDENCE.
6. In an action at law to recover deposits in a bank, evidence *held* to show that a note, executed by plaintiff to the bank and relied on as a counterclaim, was not given as a voucher on the withdrawal of amount of plaintiff's money from the bank, but was supported by a consideration received by plaintiff at the time of the execution of the note.

BANKS AND BANKING—CLAIMS AGAINST DEPOSITORS—APPLICATION OF DEPOSITS.
7. Where there was an insufficient amount of money on deposit in a bank to the credit of a customer to pay his note to the bank at its maturity, and the customer did not instruct the bank to discharge the note out of moneys subsequently deposited, the bank was not required to apply such deposits to the note, but could sue thereon and recover the reasonable attorney's fees as stipulated therein.

APPEAL AND ERROR—DISPOSITION OF CAUSE ON APPEAL—REMAND WITH INSTRUCTIONS.
8. Where there is no dispute as to the facts, but a controversy as to the rule of law applicable thereto, the court on appeal will not remand the cause for a new trial because of errors of the trial court, but will send the cause back, with directions to enter the proper judgment.

EXCEPTIONS, BILL OF—PREPARATION—COPY.
9. A bill of exceptions in an action at law, when settled and allowed, is filed in the office of the clerk of the circuit court, where it remains as a part of the record, the clerk, on an appeal being perfected, and on appellant's application therefor, being required to make a certified copy thereof for transmission to the Supreme Court.

COSTS—COSTS ON APPEAL—DISBURSEMENTS—TRANSCRIPT.
10. Where the trial judge, pursuant to an agreement of the attorneys for the parties, ordered that the original transcript of the testimony be attached to the bill of exceptions, settled, and allowed, instead of directing that the original transcript be attached to a certified copy of the bill, it was incumbent on appellant to procure from the clerk a certified copy of the entire testimony given at the trial, for which defendant was entitled to charge disbursements at the rate of 10 cents per folio and 25 cents for each certificate under Section 1, subd. 4, p. 90, Laws 1905, authorizing the clerk to charge such rates for copies of records and certificates furnished to private parties.

COSTS—COSTS ON APPEAL—DISBURSEMENTS—FOLIOS OF TRANSCRIPTS—PRESUMPTIONS.
11. On a motion to retax costs on appeal, it will be presumed, in the absence of evidence to the contrary, that the folios charged for were correctly counted.

COSTS—COSTS ON APPEAL—INDEXING TRANSCRIPT.
12. A charge for indexing the transcript on appeal should not be allowed where it could not be determined from an inspection of the transcript that such service had been performed.

COSTS—COSTS ON APPEAL—OBJECTIONS.
13. No formal objection is necessary to secure the exclusion of illegal items of costs on a motion to retax costs on appeal.

From Union:   JOHN B. CLELAND, Judge.

53 OR.——19

This is an action by S. S. Boothe against the Farmers & Traders National Bank of La Grande. From a judgment for plaintiff, defendant appeals.

Statement by MR. JUSTICE MOORE.

This is an action to recover an alleged residue of deposits made by or for the plaintiff with the defendant. In a former action between these parties, instituted for the same purpose, a judgment for the costs and disbursements was rendered against the plaintiff herein, and affirmed on appeal, but with the proviso that the conclusion reached should not prohibit him from recovering whatever might be due. *Boothe* v. *Farmers Nat. Bank,* 47 Or. 299 (83 Pac. 785). Thereafter this action was commenced, the complaint setting forth the entire account previously involved, and also exhibiting other deposits which, so far as deemed material, were made as follows: July 28, 1899, $2,000 and $53.33, respectively, and May 20, 1905, $182.84, amounting in all to $44,180.94, on account of which the plaintiff had received only $37,164.92, thus leaving in the bank, as due him, $7,016.02, for which judgment was demanded, with interest on $6,883.18 thereof, from August 22, 1904, when demand therefor is asserted to have been made.

The answer denied each allegation of the complaint, except as otherwise admitted; interposed the plea of *res judicata* to so much of the account as was embraced in the former action; alleged as counterclaims that on October 1, 1902, the plaint'ff executed to the defendant a promissory note for $2,000, payable in six months, with interest after maturity at the rate of 8 per cent per annum, upon which no payments had been made, except the interest to January 1, 1904; and that on June 27, 1904, he gave to the bank another note for $250, payable in three months, with interest from date at the rate of 10 per cent per annum, no part of which had been paid; that each of the notes stipulated for the pay-

ment of reasonable attorney's fees, in case action were instituted to collect the sum so specified, or any part thereof, and that $200 and $25, respectively, constitute suitable compensation for that purpose. The answer further set forth the deposits made by the plaintiff from November 28, 1898, when a settlement is alleged to have been had, to May 20, 1905, exhibited the moneys paid out on account thereof, and averred that, to discharge the amount of the promissory note for $2,000, the remainder in the bank to plaintiff's credit was insufficient by $14.74. For this latter balance, for the amount of the $250 note, for the further sum of $225, as attorney's fees, and for the costs and disbursements of the action, judgment was demanded.

The reply denied the allegations of new matter in the answer, and averred that the plaintiff was unable to read or write, except to inscribe his signature; that the defendant's cashier represented to him that, in order to withdraw his money from the bank, vouchers were required, whereupon he wrote his name upon such memoranda as the cashier prepared for him, which writings proved to be promissory notes, setting forth a list thereof, which includes the notes mentioned in the answer; that at the time such instruments were severally given, the plaintiff had large deposits with the defendant, in excess of the sums expressed in the notes for $2,000 and $250, respectively, for the execution of which no consideration existed; and that the defendant had notice and knowledge of the manner in which such notes were executed and of the purpose for which they were given.

The cause, being at issue and involving a long account, was referred to J. W. Knowles, who took the testimony, and on March 18, 1907, pursuant to the order of submission, filed a report, which shows that he found the facts as alleged in the answer, except that there was due from the defendant to the plaintiff $236.28, as

determined by the court in the former action (*Boothe v. Farmers Nat. Bank,* 47 Or. 302: 83 Pac. 785), with interest thereon from January 25, 1905, when the balance was ascertained, amounting to $267.14; that there was thereafter left with the bank, by or for the plaintiff, subject to check, including the deposits, specified in the complaint, of $2,000, $53.33, and $182.84, respectively, the further sum of $13,944.19, on account of which the plaintiff had received $11,619.60, thus leaving on deposit to his credit, when the answer herein was filed, $2,324.59; that prior to the commencement of this action the plaintiff never requested the defendant to apply any of the deposits, for which he had credit at the bank, upon either of the promissory notes mentioned in the answer, the validity of which he contested, thereby necessitating a resort to legal measures to enforce the collection thereof, and rendering him liable for the reasonable attorney's fees of $200 and $25, respectively; that the $2,000 note amounted to $2,513.32, and the $250 note to $318.02, and with the attorney's fees specified aggregated $3,056.34, which sum was due from the plaintiff to the defendant; that of the moneys alleged in the complaint to have been left with the bank, two items consisted of a certificate of deposit, issued by the defendant to the plaintiff November 28, 1898, for $2,000, and when canceled July 28, 1899, the accumulated interest was $53.33, for which sum the plaintiff was entitled to interest at the rate of 6 per cent per annum from August 27, 1904, amounting to $2,367.77; that in addition to the $182.84, alleged in the complaint to have been deposited May 20, 1905, the plaintiff was entitled to the further sum of $267.14, as hereinbefore stated, aggregating $2,817.75, thereby leaving due from the plaintiff to the defendant $238.59, for which remainder the referee found, as a conclusion of law, that the defendant was entitled to a judgment.

The court upon objection to the report disallowed the attorney's fees of $200 and $25, respectively, rejected the

award to the plaintiff of interest on $2,053.33, and found that the larger note was given without consideration, and, in effect, was intended by the parties as a voucher whereby the plaintiff withdrew of his own money $2,000. As conclusions of law, the court found that the plaintiff was entitled to recover the sum ascertained at the former trial, and interest thereon, amounting to $276.33, the deposit of May 20, 1905, $182.84, and the accumulated interest on a certificate of deposit, $53.33, aggregating $512.50, less, however, the amount of the smaller note, $310.41, leaving due the plaintiff $202.09, for which remainder judgment was rendered, and the defendant appeals.                              REVERSED.

For appellant there was a brief and an oral argument by *Mr. James D. Slater.*

For respondent there was a brief over the names of *Messrs. Lomax & Anderson,* with an oral argument by *Mr. Leroy Lomax.*

MR. JUSTICE MOORE delivered the opinion of the court.

1. The court was requested to modify one of its findings of fact so as to change the date February 20th to the 10th of that month, June 20th to the 30th of that month, and also to alter the year 1901 to the years 1902 and 1903, when certain deposits were made by the plaintiff, as follows:  February 10, 1902, $2,000; June 30, 1902, $1,000; July 18, 1902, $2,500; June 9, 1903, $2,615.08; July 6, 1903, $76.71; and August 14, 1903, $150—but, the motion having been denied, it is maintained that error was thereby committed. The pleadings admit that the sums of money thus stated were placed in the bank by or for the plaintiff on the several dates specified in the motion.  Where there is no issue in respect to a particular fact, it is usually unnecessary for any finding to be made in relation thereto. *Moody* v. *Richards,* 29 Or. 282 (45 Pac. 777); *Jennings* v. *Frazier,* 46 Or. 470 (80 Pac. 1011).

2. The court having been requested, however, to amend its findings so as to conform to the facts admitted, a failure to comply therewith constitutes error, unless the finding as made could not have been detrimental to the party requesting the modification. *Wood* v. *Broderson,* 12 Idaho, 190 (85 Pac. 490) ; *State* v. *Baird,* 13 Idaho, 126 (89 Pac. 298).

3. The defendant's counsel, in order to prove that such refusal was prejudicial to his client, sets forth in his brief a copy of the account, taken from the books of the bank, indicating the money left with the defendant, by or for the plaintiff, that was subject to check, and specifies the several withdrawals therefrom. By inserting on the credit side a deposit of $2,053.33, as of July 28, 1899, as alleged in the complaint, it appears from the statement that on October 1, 1902, when the plaintiff executed to the defendant the promissory note for $2,000, he had on deposit only $669.51, thus establishing the fact, it is asserted, that a consideration existed for giving the larger note mentioned, and hence errors were committed in failing to allow interest thereon, and in refusing to award attorney's fees for the collection thereof. The sum so inserted in the account consists of a certificate of deposit, which was issued by the defendant to the plaintiff November 28, 1898, for $2,000, and left with J. W. Scriber, the defendant's cashier, who indorsed Boothe's name on the instrument, credited thereon $53.33, as accumulated interest, and impressed on the face of the certificate the following cancellation: "Paid Jul. 28, 1899"—but did not make any memorandum of the transaction in the books of the bank whereby the plaintiff secured credit therefor. Whether or not Scriber had authority to write Boothe's name on the back of the instrument and surrender it to the bank is not necessary to inquire, for, the complaint having alleged that the amount thereof, to-wit, $2,053.33, was deposited July 28, 1899, to plaintiff's credit, the action of the

cashier in the respect mentioned must be treated as ratified; and, this being so, a consideration existed for the execution of the note for $2,000 at the time it was given, since the evidence tends to show that the plaintiff then received from the bank $3,300 in cash, for which he gave the note last mentioned, and also drew a check on the bank for $1,300.

4. The plaintiff's counsel was not obliged, in a law action, to anticipate a defense, or required to allege in the complaint that either of the notes set forth in the answer as counterclaims were given without consideration. Bliss, Code Pl. (3 ed.) § 200.

5. The answer having alleged that the plaintiff executed these negotiable instruments, the giving of which raises the disputable presumption of a sufficient consideration (Section 788, subd. 21, B. & C. Comp.), the averment in the reply that no consideration for either of the notes existed adequately presented the issue in relation thereto, but the finding of the court thereon is not, in our opinion, justified by the preponderance of the evidence.

6. It remains to be seen whether or not the testimony supports the court's finding that the note for $2,000 was given to evidence the withdrawal of money from the bank for which the plaintiff had credit, as for a deposit subject to check. The consideration of this question necessitates a statement of the plaintiff's monetary relations with the defendant and its cashier. The narration will begin with the dealings of the parties, to illustrate their mode of doing business, though a part of their account is not involved in this action. The plaintiff sold a farm, and on October 21, 1897, left with the defendant $10,350, taking a certificate of deposit therefor, which provided for the payment of interest thereon at the rate of 5 per cent per annum. No compensation, however, was to be paid for the use of the money if left with the bank after the expiration of 12 months. He also deposited

with the defendant on October 26, 1897, the further sum
of $640, and received a like certificate therefor.   He
obtained from the bank at sundry times various sums
of money, aggregating $1,650, for which he gave promis-
sory notes, and, to insure the payment thereof, assigned
to the bank a promissory note for $4,600, which he had
received as evidence of a part of the purchase price of
the land.   The collateral note, amounting to $4,902.80,
was paid to the bank November 28, 1898, at which time
a settlement of the account was consummated, and the
certificates of deposit were surrendered, amounting to
$10,920.68 and $676.40, respectively.   The plaintiff's
notes, evidencing loans which he had secured from the
bank, amounting to $1,695.69, were paid off, and for the
remainder of the money he received proper credit, only
two items of which will be mentioned, to-wit, certificate
of deposit No. 3708, for $10,625, issued to J. W. Scriber,
and certificate No. 3709, for $2,000, issued to Boothe,
who left it at the bank with other papers belonging to
him.   The certificate for the larger sum was made payable
as indicated, to enable Scriber to secure property for
Boothe, who gave the cashier written authority to pur-
chase for him 100 shares of the capital stock of the
defendant, stipulating to pay therefor a price not exceed-
ing $106.25 a share, subject to delivery January 1, 1899;
the party selling to receive the dividend to be declared
as of that date.   The stock was obtained, but the plaintiff
declined to accept it, Scriber agreed to repay the money
evidenced by the certificate, and pursuant thereto he
thereafter placed in the bank, subject to check, various
sums of money to the credit of Boothe, upon which the
latter drew as necessity required.   If at any time the
deposits so made were insufficient to meet the plaintiff's
demands, he obtained from the defendant such sums of
money as he occasionally required, by giving to the bank
his promissory notes therefor, which instruments were
discharged from deposits thereafter made by Scriber,

whenever settlements were effected.    Thus on April 7, 1899, an accounting was had, and four promissory notes, given by Boothe for $100 each, were surrendered, and he paid $3.79 as interest thereon.    Another settlement was had July 19, 1899, and two notes of $100 each, given by the plaintiff to the defendant, were surrendered, but no interest was demanded for these loans.    Accounts with Boothe of the money thus deposited to his credit, and of his withdrawals thereof by check, were kept by the bank, and an account of the money which was placed in the bank or paid to or for the plaintiff as a credit on the certificate of deposit for $10,625 was kept by Scriber. It appears from a judgment roll, introduced in evidence at the trial of this cause, that on January 25, 1906, Boothe commenced an action against Scriber in the circuit court for Union County, to recover $6,046.76, as a balance alleged to be due on account of the certificate of deposit, issued for the purpose of purchasing the bank stock, and that proceedings were had to the effect that, on February 23, 1906, a verdict for $463.95 was returned in favor of the defendant in that action, and, judgment having been rendered thereon, has become final, thus conclusively establishing the fact that Scriber had fully accounted for the money which he thus received from the plaintiff herein.    The evidence supports the referee's finding to the effect that, prior to the commencement of this action, the plaintiff never instructed the defendant to apply any part of the $2,053.33, the amount of the certificate of deposit that was canceled July 28, 1899, towards discharging his promissory note for $2,000; and in the absence of such direction, the bank was not obliged to appropriate the deposit in that manner.    Morse, Banking (3 ed.), § 559; *Camp* v. *First Nat. Bank,* 44 Fla. 497 33 South. 241: 103 Am. St. Rep. 173).

Thus in *London and San Francisco Bank* v. *Parrot,* 125 Cal. 472, 485 (58 Pac. 164, 167: 73 Am. St. Rep. 64), Mr. Justice HARRISON, discussing a similar question,

says: "The moneys so deposited were not directed to be applied as payments upon the note; and, in the absence of any direction, the bank was not required to make such application. A bank which holds the note of its customer is not required, at its maturity, or thereafter, to apply thereon moneys subsequently deposited by the customer, and an indorser or surety upon the note is not discharged by its omission to make such application." So, too, in *Bacon's Adm'r* v. *Bacon's Trustees*, 94 Va. 686, 693 (27 S. E. 576, 579), Mr. Justice Buchanan makes the following observation: "Where the maker has a sufficient sum deposited to satisfy the note when it becomes due and payable, there seems to be a conflict among the authorities as to the duty of the bank to charge the note up to the maker as if it were a check upon the deposit; but if, when the note becomes due and payable, the bank has not sufficient funds of the maker to satisfy the debt, it is not required to appropriate the deposit to the payment of the note, neither is it required to appropriate subsequent deposits in such case to its payment." In the case at bar the $2,000 note was executed to the defendant, made payable at its bank, and held by it when the counterclaim therefor was interposed in this action. Though there may be some contrariety of judicial utterance as to the liability of a bank for a failure to apply the deposits of its customer to the satisfaction of a note held by it, when by omitting to make such appropriation the rights of a surety may be prejudiced thereby (*Pursifull* v. *Pineville Banking Co.*, 97 Ky. 154: 30 S. W. 203: 53 Am. St. Rep. 409), the doctrine asserted in that case, if adopted as a rule of practice, can have no application herein, for the plaintiff is the only party liable on the note.

7. An examination of the books of the bank, as disclosed by a copy of so much thereof as relates to the account of the plaintiff, shows that on October 1, 1902, when the larger note was executed, he had overdrawn

his account to the extent of $1,503.77. It appears, however, that at that time he was charged $116.95, as interest on overdrafts, which sum having been disallowed at the trial, the money which he received, as evidenced by the books, exceeded the deposits by $1,386.82. By giving the plaintiff credit for $2,053.33, the amount of certificate No. 3709, he had on deposit, subject to check, only $666.51, when the larger note was given. No money was left with the bank to plaintiff's credit from October 1, 1902, until June 9, 1903, when Scriber deposited for him $2,615.08, which sum equaled the then overdraft, as noted on the books. The interest charged on overdrafts to the latter date had been augmented to $228.26, which having been disallowed, increased the deposit of $2,053.33 to $2,281.59, for which the plaintiff, on June 1, 1903, should have had credit. At that time he owed the bank only $2,000, evidenced by his promissory note, which matured April 1st of that year, the interest thereon having been paid by Scriber to October, 1903. As there was an insufficient amount of money on deposit to plaintiff's credit when the note matured, and as he never instructed the defendant to discharge that obligation from moneys thereafter to be left with the bank to his credit, we conclude that the manner of conducting the business and in loaning money to the plaintiff upon his notes, until such time as Scriber could make deposits in the bank to his credit, does not warrant the finding made by the trial court that the note for $2,000 was given for the purpose of withdrawing that or any amount of the plaintiff's money from the bank.

8. As we view the case, there is no dispute as to the facts involved, but rather a controversy as to the rule of law applicable thereto; and, this being so, instead of remanding the cause for a new trial, it will be sent back, with directions to enter judgment in conformity with the findings made by the referee, there being no contest as to the reasonableness of the attorney's fees for enforc-

ing the collection of the notes. Elliott, App. Pro. § 564; *Nodine* v. *Shirley,* 24 Or. 250 (33 Pac. 379) ; *Graham* v. *Merchant,* 43 Or. 294 (72 Pac. 1088).

For the error committed in setting aside the referee's finding in the particular specified, the judgment is reversed, and the cause remanded, for such further proceedings as may be necessary and not inconsistent with this opinion.                                     REVERSED.

---

Decided April 30, 1909.

## ON MOTION TO RETAX COSTS.

[101 Pac. 390.]

*Mr. James D. Slater* for the motion.

*Mr. Leroy Lomax, contra.*

Opinion by MR. CHIEF JUSTICE MOORE.

This is a motion to retax costs. The judgment herein was reversed, whereupon defendant's counsel filed a statement of the costs and disbursements incurred by his client in preparing for the trial of the cause in this court, containing, *inter alia,* the following charge: "For making transcript on appeal, $192.50." Objections to this item having been filed, our clerk considering the issue thus presented, allowed only $53.50, and to review such action this motion was interposed.

9. The transcript shows that the defendant's counsel submitted a bill of exceptions to the trial judge, who appended thereto a certificate, the material part of which is as follows:

"It is hereby ordered that the original transcript of the testimony taken in said cause be attached to the foregoing bill of exceptions as a part thereof."

Immediately following appears an "Index," containing eight typewritten pages, and thereafter is presented a transcript of the testimony given at the trial, to which is attached a certificate as follows:

"I, Ed Wright, county clerk of Union County, State of Oregon, and ex-officio clerk of the circuit court of the

State of Oregon for the county of Union, hereby certify that the foregoing transcript is a true and correct copy of the original bill of exceptions in the foregoing entitled cause and of the whole thereof, including the transcript of evidence taken in said cause and which original bill of exceptions is now in my custody in my office."

A supplemental affidavit procured from that clerk is to the effect that his charges for preparing the transcript on appeal were as follows:

"Pleadings, $40; Bill of Exceptions, $123.30; Indexing, $28.20; Certificate, $1.00; Total, $192.50."

The plaintiff's counsel objects to the allowance of any sum for transcribing the original testimony, contending that the trial judge ordered such testimony to be attached to the bill of exceptions.

Our statute regulating the preparation of a formal written statement for the trial on appeal of an action at law contains the following clauses, to-wit:

"An exception is an objection taken at the trial to a decision upon matter of law." Section 169, B. & C. Comp.

"No particular form of exception shall be required. The objection shall be stated with so much of the evidence or other matter as is necessary to explain it, but no more." Section 171, B. & C. Comp.

"The statement of the exception, when settled and allowed, shall be signed by the judge and filed with the clerk, and thereafter it shall be deemed and taken to be a part of the record of the cause." Section 172, B. & C. Comp.

The bill of exceptions in an action at law, when so settled and allowed, is filed in the office of the clerk of the circuit court, where it remains as a part of the record; and, when an appeal is perfected from a judgment rendered in an action at law, the clerk having custody of such bill is required, upon the appellant's application therefor, to make a certified copy thereof that it may be transmitted to this court.

10. When, therefore, the trial judge, pursuant to the agreement of the attorneys for the parties, made the

order hereinbefore referred to, instead of directing that the original transcript of the testimony be attached to a certified "copy" of the bill of exceptions, it was incumbent upon the defendant, if it desired literally to comply with such order, to procure from the clerk a certified copy of the entire testimony given at the trial. This has been done; and the defendant is entitled to recover the fees allowed by law therefor. Assuming, without deciding, that the statute prescribing the compensation to which a clerk is entitled to making certified copies of papers on file in his office (Section 2935, B. & C. Comp.) was amended so that the fees collected therefor in the case at bar are payable to Union County, and that the rate of remuneration is as follows:

"For furnishing private parties copies of records and files, for each folio ten cents, and for each official certificate thereto, twenty-five cents" (Laws 1905, p. 90, § 1, subd. 4).

The item in the cost bill to which objection is made will be considered.

11. To determine whether or not accurate charges have been made for preparing the record before us would necessitate a careful counting of the folios in the transcript. The copy of the pleadings contains 100 pages, for which $40 was charged, or 40 cents a page, which, at 10 cents a folio, would embrace 4 folios to the page. It may be that the pages do not contain so many folios; but, in the absence of any evidence to the contrary, we shall assume that the computation is correct. So, too, a charge of $123.30 is made for a copy of the bill of exceptions and of the testimony, including in all 544 pages. This is a fraction over 27 cents a page, which, at 10 cents a folio, would average 2.7 folios to the page; and this computation we shall also take for granted.

12. It will be remembered that a charge of $28.20 is made for indexing. We are unable to determine from an inspection of the transcript that any such service

was performed; and this sum will be disallowed. It will also be recalled that the sum of $1 is charged for a certificate. As there are only two official certificates in the record, the compensation therefor will be reduced to 50 cents. Hence the total amount rejected is $28.70.

13. These charges be'ng illegal, no formal objection was necessary to secure the exclusion thereof. *Sommer* v. *Compton*, 53 Or. 341 (100 Pac. 289).

In all other respects the claim as made is allowed; and the disbursements will be retaxed as here ind'cated.

REVERSED: COSTS RETAXED.