### No. 8243.

THE SECOND NAT'L BANK OF LAFAYETTE *v.* HILL ET AL.

PROMISSORY NOTE.—*Application of Bank Deposits of Maker to Payment.— Discharge of Sureties.—Deposits not Collateral Security or Held in Trust by Bank for Sureties.—Check.*—In an action by a bank upon a promissory note, the sureties answered, alleging that the note was given for money borrowed from the bank by their principal, and t] at they were sureties only therein, which the bank knew at the time the note was executed; that, prior to its maturity, the principal consented and directed the bank to allow and pay the note, after its maturity, out of his general deposits therein; that, after its maturity, the bank had, of the funds of the principal on deposit, more than sufficient to pay the note and interest; that the bank failed to apply the funds of the principal so deposited in payment of the note, but, subsequent to its maturity, suffered the principal to check his funds out of the bank. Wherefore they claim that they are released.

*Held*, on demurrer, that the answer was insufficient.

*Held*, also, that the failure of the bank to apply to the payment of the note the money which the principal had on general deposit in the bank at and after the maturity of the note did not discharge the sureties.

*Held*, also, that the bank had a right to apply the money which the principal had on general deposit, after the maturity of the note, to its payment, with or without the consent or direction of the principal; but that the checks subsequently drawn by him were a withdrawal of his previous directions upon the subject.

*Held*, also, that it was competent for the bank and the depositor to make any disposition of the deposits, before their actual application, which they might see proper.

*Held*, also, that the debt due from the bank to the principal on his deposit account was neither collateral security in its hands to the debt due on the note to the bank, nor were such deposits held by the bank as trust funds for the sureties on the note.

From the Carroll Circuit Court.

*J. M. Larue* and *F. B. Everett*, for appellant.

*W. D. Mote*, for appellees.

Morris, C.—This suit is upon a promissory note, dated April 12th, 1877, executed by Samuel Hill, John Hair and William Mote for $300, payable four months after date, to the order of the appellant, at its bank in Lafayette, with five per cent. attorney fees and with interest at the rate of ten per cent. per annum after maturity, without relief from valuation or appraisement laws. The suit was commenced in the Tippecanoe Circuit Court, and taken by change of venue to the Carroll Circuit Court.

The defendant Hill answered the complaint in three paragraphs. Though the record says that the answer contained four paragraphs, there are but three in the record. It is not material how this may be, as the answer was the separate answer of Hill. Judgment was rendered against him and in favor of the appellant, and he does not complain. We need not further notice the proceedings as to Hill.

Hair and Mote filed a joint answer in four paragraphs. The appellant demurred to the fourth paragraph of their answer. The demurrer was overruled. It then replied to the first, second, third and fourth by a general denial. There was a special reply to the fourth paragraph of the answer of Mote and Hair. The cause was submitted to a jury. Verdict for the appellant against Hill, and against it and in favor of Mote and Hair. Motion by the appellant for a new trial, which was overruled. Judgment upon the ver-

dict. The evidence is made part of the record by bill of exceptions.

The rulings of the court upon the demurrer to the fourth paragraph of the answer of Mote and Hair, and on the appellants' motion for a new trial, are assigned as error.

The fourth paragraph of the answer of Mote and Hair admits the execution of the note in suit, and then states that the defendant Hill signed the note as principal, and that they, Mote and Hair, signed it as the sureties of Hill; that the bank knew at the time that Hill was principal, and they his sureties; that the note was given for money borrowed by said Hill of the appellant; that the appellant is a banking corporation, organized under the national banking law; that after the maturity of the note, said Hill made general deposits in the appellant's bank, from time to time, to the amount of $8,000, and in sums exceeding the amount due on said note; that said Hill, prior to the maturity of the note, "had consented and directed the appellant to allow and pay said note, interest, etc., thereon at any time after its maturity, out of his deposits in said bank, if he should have any such funds in said bank to pay the same or any part thereof;" that, after said note became due, the appellant had, of the funds of said Hill on deposit in its bank, more than enough to pay said note, interest, etc.; that it failed and neglected to apply any of the funds of said Hill so on deposit in its bank as aforesaid (except $53), in payment of said note, but, long subsequent to the maturity of said note, suffered said Hill to check said funds out of said bank. Wherefore they say they are discharged.

The question raised by the demurrer to this paragraph of the answer is: Did the appellant, by failing to apply to its payment the money which Hill had on general deposit in its bank, at and after the maturity of the note, discharge Mote and Hair, the known sureties of Hill on the note. That the bank had a right so to apply the money which Hill had.

on general deposit after the maturity of the note, with or without the consent or direction of Hill, will not be seriously questioned.   In speaking of general deposits, Morse says: "So soon as the money has been handed over to the bank, and the credit given to the payer, it is at once the proper money of the bank.   It enters into the general fund and capital, and is undistinguishable therefrom.   Thereafter the depositor has only a debt owing him from the bank ; a chose in action, not any specific money, or a right to any specific money."   Against the debt thus due the depositor, the bank may set off any debt due from the depositor to it.   Morse on Banking, pp. 30 and 42 ; *The Commercial Bank, etc.*, v. *Hughes*, 17 Wend. 94 ; *Beckwith* v. *The Union Bank, etc.*, 4 Sandf. 604.

Though the funds deposited with the appellant might have been applied by it to the payment of the note in suit, the bank did not hold the funds, in any sense, in trust for the sureties of Hill on the note.   Had Mote and Hair, as such sureties, paid to the appellant the note in suit, they could not, had the bank at the time been indebted to Hill on his deposit account in a sum exceeding the amount paid on the note, have required the bank to apply such indebtedness for their benefit, or to reimburse them for the money paid by them on the note for Hill's benefit.   They could not have required this of the bank for the obvious reason that they could not have, under the circumstances, any right to, or interest in, the debt due from the bank to Hill.

In the case of *Voss* v. *The German American Bank*, 83 Ill. 599, the note sued on was as follows :

"CHICAGO, Oct. 4th, 1873.

"Fifteen days after date we promise to pay to the order of the Germania Bank of Chicago three hundred dollars, at their office, with interest at the rate of ten per cent. per annum after due, until paid.   Value received.

[Signed,]                    "ALBERT MICHELSON.

"Indorsed :   A. Voss."

"The note," says the court, "appears to have been made for Michelson's benefit, and Voss to have been only a surety, as between himself and Michelson, and, as Michelson is shown to have had funds on deposit in the bank, from time to time, after the maturity of the note, and before the bringing of the suit, to an amount exceeding that of the note, it is insisted that the bank was bound to apply such funds to the payment of the note, and that not having done so, Voss was discharged. And the case of *McDowell* v. *Bank of Wilmington and Brandywine*, 1 Harrington, 369, and *Law* v. *East India Co.*, 4 Vesey, 824, are cited as authorities that, under such circumstances, a surety will be discharged. Without remark upon or consideration of these authorities, we do not regard them as having application to the case in hand. We do not recognize, in such a case as is here presented, the existence of any such obligation as the one which is asserted by appellant's counsel."

The case of *McDowell* v. *The Bank of Wilmington, etc.*, *supra*, seems to be the other way. The bank had means in its hands which it might have applied to the payment of the note. The court say: "Upon what principle of justice can such a creditor in a court of equity claim to hold the surety bound, after the debt had been in point of fact paid, if the creditor had elected to say so or to so consider it. The creditor could have set off the debt and charged it in the account, and having the power was it not his duty to do so in justice to the surety?"

The question is not what the creditor might or could have done, but was he obliged to do this or discharge the surety? The creditor might sue the principal debtor as soon as the debt matured, and thereby save the surety from future hazard, but he is not obliged to sue. He may delay the collection of his debt even until the principal debtor fails, without discharging the surety. To hold that the bank was obliged to apply the deposits made by Hill to the payment of the note,

would be to compel him to collect his debt, though none of the parties bound to pay it had requested him to do so.

The case of *Martin* v. *The Mechanics Bank*, etc., 6 Har. & J. 235, is in point. The action was upon a bill of exchange for $645, drawn by W. P. Strike on W. & A. H. Woods, payable to Martin, and was endorsed by him and others to the bank. The bill was dated August 24th, 1819, and due at nine months. On the 20th of June, 1820, and after the bill had matured, W. & A. H. Woods had on general deposit in the bank $700, sufficient to pay the bill. The sum thus on deposit was not applied by the bank in payment of the bill, but soon thereafter paid out on the checks of the depositors. Martin, the endorser of the bill, contended that the $700 on deposit June the 20th, 1820, should be held to be a payment of the bill; or, if not, the transaction amounted, in law, to a waiver of the right of the bank to proceed against him as endorser; that he was exonerated from all liability. The court held that the deposit was not a payment of the bill, and that the failure of the bank to apply the deposit to the payment of the bill did not release the endorser. The court also held that the deposits made from time to time, after the maturity of the bill, and the paying out of the same upon the checks of the depositors, did not indicate a purpose, on their part, to apply the money in payment of the bill, but rather the contrary; that, under such circumstances, the law will not require the banker to disappoint its customers by such an application of his deposits.

True, it is averred in the answer, that Hill said to the appellant, some time before the maturity of the note, that, when it matured, any sum that he might then have on deposit might be applied to its payment. But this is just what he said, by implication of law, whenever he made a general deposit in the bank. The act of making such a deposit was authority to the bank to apply the deposit to the payment

of the note in suit. The statement of Hill gave the bank no additional authority. The checks subsequently drawn by Hill upon the bank were a withdrawal of his previous directions upon the subject. It was competent for Hill and the bank to make any disposition of the deposits, before their actual application, which they might see proper. The sureties of Hill had no interest in such deposits. They were not trust funds held by the bank for their benefit.

It is true, that the creditor, having obtained security for his debt, becomes a trustee of the same for all parties concerned. If he obtains judgment against the principal and takes out execution, but does not levy it, though the principal debtor has property upon which a levy might be made, he does not, unless the execution operates as a lien, by delay, however long continued, discharge the surety ; but if he causes a levy to be made, he can not release it without discharging the surety to the extent of the value of the property levied upon. So, in this case, the mere fact that the appellant might have applied the deposits to the payment of the debt is not enough. The debt due from the bank to Hill on his deposit account, was not a collateral security in its hands to the debt due from Hill and the appellees to the bank. *Philbrooks* v. *McEwen*, 29 Ind. 347 ; *Hampton* v. *Levy*, 1 McCord Ch. 107 ; *Lang* v. *Brevard*, 3 Strob. Eq. 59.

In the case of *Glazier* v. *Douglass*, 32 Conn. 393, the plaintiff sued the defendant as the endorser of a note made by Henry Rogers & Co. for $515, payable to the order of the defendant, which was endorsed by him, for the accommodation of the makers, to the plaintiff. At and after the maturity of the note, the makers, who become insolvent, were indebted to a firm, of which the plaintiff was a member, in a sum exceeding the amount of the note sued on, and by a statute of the State the plaintiff had a right to set off the indebtedness of the makers of the note to said firm against the amount due on the note. The plaintiff did not

do this, but, with a full knowledge of all the facts, paid the makers the amount due them, and then brought this suit against the defendant as the endorser of the note.

The defendant insisted that the failure of the plaintiff to set off the amount due from Rogers & Co. to said firm, against the note sued on, released him from liability as endorser. The court held that he was not released. We quote from the opinion, as follows:

"By a series of decisions adopting the equitable principles of the civil law, there have been annexed to the undertaking of a surety in a case like this, three conditions, and if either is broken by the creditor that undertaking becomes inoperative, and the surety is discharged.

"The first is that the creditor shall present the note to the maker for payment at maturity, and if dishonored use due diligence in giving notice to the surety. The second is that no obligatory extension of the time of payment shall be given which will preclude the surety, if he pay the note to the creditor, from enforcing immediate repayment by compulsory process from the principal debtor. And the third is, that the creditor shall apply in payment of the debt, or hold in trust for the benefit of the surety, all securities which he may receive or procure for that purpose by contract or operation of law, so that if compelled to discharge the debt the surety may be subrogated to them.  *  *  *  *  *  *

"In respect to what shall be deemed a security within the meaning of the condition, there has been some contrariety of decision. The better opinion is, that it must be a mortgage, pledge or lien—some *right* to or interest in property which the creditor can hold in trust for the surety, and to which the surety if he pay the debt can be subrogated and the *right* to apply or hold must exist and be absolute."

Had Mote and Hair paid the note sued on to the bank, would their right to the debt due from the bank to Hill have been absolute? Could they, as against Hill or the bank,

have claimed to be subrogated to that debt? Did the bank become the trustee of its own debt to Hill, and hold it in trust for Mote and Hair? We think the debt due from the bank to Hill for the deposits made by Hill was not a trust fund, that it was not held by the bank in trust for the appellees. *Pease* v. *Hirst*, 5 Man. & R. 88.

The question involved in this case is one of some practical importance, and we have endeavored to give it that consideration which its importance demands. We believe that the conclusion which we have reached will be found to be supported by the weight of authority, and in agreement with the business usages of the country.

We think the court erred in overruling the demurrer to the fourth paragraph of the answer of Mote and Hair, and that the judgment below should be reversed.

PER CURIAM.—It is ordered that, upon the foregoing opinion, the judgment below be reversed, at the costs of appellee.