## ENGLISH—AMERICAN LOAN & TRUST CO. *v.* HIERS.

1. Notice or knowledge of failure of consideration of a negotiable promissory note which the director of a bank sells to it before the maturity of the paper is not imputable to the bank, when in the transaction the seller did not act for it at all, but exclusively for himself, and the bank was represented by another of its officials, who alone acted for it.

2. A defendant who sets up as a defense that another had notice of a given fact assumes the burden of proving that this is so. Publishing in a newspaper an

advertisement warning the public not to purchase a described promissory note does not bind one who neither saw the advertisement nor had any knowledge of its contents.

3. Even if the purchaser of a negotiable promissory note had knowledge, before purchasing, that the consideration thereof had failed, one to whom he sold it before maturity, and who took bona fide and for value without such notice, would be protected. A fortiori is this so if both purchasers took without such notice.

Argued February 1,—Decided February 28, 1901.

Complaint on note.    Before Judge Norwood.  City court of Savannah.    March 1, 1900

*G. T. & J. F. Cann,* for plaintiff.
*Saussy & Saussy,* for defendant.

Lewis, J.    The English–American Loan and Trust Company brought suit in the city court of Savannah against J. Lawton Hiers, upon a promissory note made by Hiers, dated August 27, 1895, due one year after date, payable to the order of D. Kraus and by Kraus indorsed in blank.    The defendant filed a plea in which he admitted the execution of the note sued on, but denied that he was liable thereon, claiming that there had been a total failure of consideration.    The note was given in payment of an annual premium of insurance in the Mutual Life Insurance Company of New York, of which Kraus was an agent in the city of Savannah.    The defendant alleged that Kraus and his partner, Bussey, solicited him for life-insurance in the company which they represented, and promised him a certain kind of policy, in consideration of which he gave the note sued on in this action; that the policy which they actually delivered to him in exchange for his note was not the one which he had been promised, as it contained no stipulation for the payment of annual dividends, a provision which had been a special inducement to defendant; that, upon discovering that the policy which he had received was not the one for which he had contracted, he made ineffectual efforts to return it and secure the note given for the amount of his premium; and that, upon the refusal of the agents of the insurance company to comply with his requests to that effect, he inserted in the Savannah Morning News an advertisement repudiating his note and warning the public against purchasing or otherwise negotiating it.    By amendment he alleged that the plaintiff was not the bona fide owner of the note, and that

its ownership waš colorable and for the purpose of collecting it for the original payee, who had procured it by fraudulent representations as to the nature and character of the life-insurance for the premium of which the note was given. From the testimony of the defendant below it appears that Kraus and Bussey, the Savannah agents of the Mutual Life Insurance Company of New York, solicited Dr. Hiers for insurance in that company, promising him that the annual dividends on the policy which they would issue to him would materially reduce the amount due by him for annual premiums; that Dr. Hiers signed an application for insurance without reading what it contained, and accepted a policy (which he likewise did not read for a considerable time after receiving it), giving in payment of the first annual premium his note for $351. Subsequently, upon reading the policy, he discovered that it was not the one which had been promised him, and he made repeated efforts, without success, to surrender it and secure in return the note which he had given. Upon the refusal of the insurance agents to return his note, he inserted in a daily newspaper in Savannah the advertisement to which reference has already been made. The first insertion of this advertisement was on October 18, 1895. Previously, on September 4, 1895, the note had been sent to Shedden, an agent of the insurance company in Atlanta and also a director of the plaintiff company, and had by him, on September 5, 1895, been discounted. Shedden, in due course of business and before maturity, sold the note to the plaintiff. It does not appear that Shedden ever saw the advertisement in the Savannah paper, or that he had notice of any defect in the note, nor is it shown that he had anything to do with the management of the plaintiff company. The case went to the jury upon these facts, and a verdict was rendered in favor of the defendant. To the overruling by the court below of its motion for a new trial the plaintiff excepted.

1. One ground of the motion for a new trial is that the court erred in the following charge to the jury: "Assuming, as it is not denied, that Shedden is a director in this bank, if you find that Shedden took the note with knowledge of a defense that Dr. Hiers had, in other words that he had repudiated the contract and refused to pay the note, whether he got the information from publications in the paper or whether he got it from Bussey and Kraus or in any other way, if you find that he had that knowledge, I charge you

that that knowledge of Shedden is imputable to the bank here."
This charge was error. In the first place, it was wholly unauthorized by the evidence. Apart from that, it plainly appears that Shedden, in the sale of the note, was not acting for the plaintiff bank, but apparently for himself individually, for he had acquired the note from the payee long before the sale to the bank was made. The fact that he was a director of the bank would not charge that institution with any knowledge which he might possess of a defense to the note. His relation to the plaintiff did not prevent him from entering into the transaction in question. He traded directly with the cashier of the bank, and it is not claimed that the latter had any knowledge of a defect in the note. The bank was not represented by Shedden in this transaction, but by Robinson, its cashier, and the evidence is uncontradicted that neither Robinson nor any other employee of the plaintiff knew or had ever heard of any defense to the note before its maturity, which was some time after it was acquired by the bank. The cases relied on by counsel for defendant in error have no application to the case at bar. For instance, in the case of *Brobston* v. *Penniman*, 97 *Ga.* 527, which is cited with confidence, the ruling is as follows: "Where the president and cashier of a bank, being also members of a partnership composed of themselves and another person, to the capital stock of which they had, under the partnership articles, agreed to contribute a given sum, without the knowledge or consent of that person executed and delivered to the bank a promissory note in the name of the partnership for the purpose of raising the money they had so agreed to put into the partnership business, although the money obtained from the bank upon such note was in fact used for the purpose stated, the transaction was one for the private benefit alone of the two members of the partnership who thus raised the money. . . Under these circumstances, the knowledge of the president and cashier . . was the knowledge of the bank itself." In that case, the officers whose knowledge was held to be imputable to the bank were the president and cashier, whose special duty it was to represent the bank in negotiating loans and discounting paper. In the present case, Shedden, with whose knowledge it is sought to charge the bank, was merely a director, and, so far as the record discloses, had no active participation in the management of the bank's affairs. Also, in the case of *Morris* v. *Banking Co.*, 109 *Ga.* 12, the officer

whose knowledge of a defect in a note was held chargeable to the bank was the cashier, who had "full authority and control of the discounts of the bank." No such connection between Shedden and the plaintiff bank is shown in the present case. In the last case cited, on page 24, Justice Little uses the following language, which we think is fully in point in the present case: "We concede it to be a sound proposition that where an officer or agent of the corporation, as a party in interest for himself, deals with the corporation, the latter is not charged with notice of the information possessed by such officer or agent so dealing."

In the case of *National Bank* v. *Demere*, 92 *Ga.* 735, it appeared that a third person borrowed money from a bank for the benefit of the cashier thereof, the cashier putting up collaterals belonging to himself, and the officers representing the bank in making the loan not being aware that the money was for the use of the cashier or that the collaterals belonged to him, and that they did not acquire this information until after the cashier had fraudulently withdrawn the collaterals and applied them to his own use. It was held that the bank was not accountable for the value of the collaterals in settling its claim against the borrower, and that the agency of the cashier to assign the assets of the bank of which he was the immediate custodian did not extend to assets held as collateral security for a loan made to another person for his benefit, and secured not by collaterals belonging to that person, but furnished by the cashier himself. The principle upon which this decision was based was that the cashier was, as owner of the collaterals, an opposite party in interest to the bank, and his custody of this property for the bank involved a risk which it may not have been willing to assume. On page 739 the following language is used in this connection: "Under such circumstances, the cashier's knowledge is not the knowledge of the bank, and his fraudulent transfer in its name but in his own behalf of property held in this manner is not the act of the bank. His agency as cashier to assign its assets, of which he is the immediate custodian, does not cover an act of this kind." There is in the present case, if anything, less reason to hold the bank liable for the knowledge of its director than there was in the *Demere* case to hold that the act of the cashier was not the act of the bank.

2. In a case of this sort, where the defendant sets up that the

plaintiff purchased the note sued on with notice of a defect therein, the burden is upon him to prove his allegations. In the present case there was an utter failure to make any such proof. The only testimony tending in that direction is that relating to the publication in a Savannah newspaper of a notice that the defendant had repudiated his note. It does not appear that this notice was ever brought home to the bank or to Shedden, but on the contrary the evidence is undisputed that neither ever saw or heard of this newspaper publication, and consequently they can not be bound by any such notice.

3. Conceding that Shedden had notice before the note was sent to him that its consideration had failed, the plaintiff, to whom he sold it before maturity, and who took bona fide, for value, and without such notice, will be protected. A fortiori is this so when it appears that neither Shedden nor the plaintiff had any such notice.

The foregoing covers the vital questions in this case, by which it should be controlled at the next trial, and for that reason none of the other special grounds nor the general grounds of the motion are discussed. This court does not, however, wish to be understood as holding that the defense set up would have been good, even against the original payee. That question was not raised, and hence is not decided.

*Judgment reversed. All the Justices concurring, except Simmons, C. J., and Cobb, J., absent.*