Wanamaker, J.
It is agreed by the parties that the sole • question in this case is: Was the knowledge of Boesel as an individual the knowl *437 edge of Boesel as president and manager of the bank?
Counsel for the bank put the question1 very clearly in their brief, to-wit: “The record discloses1 that it is conceded that the plaintiff was a national1 bank; that Julius Boesel, the payee of the notes, was its president and active manager; that he sold and discounted the notes to the bank, and1 that in so doing he acted for himself personally as indorsee and also for the bank as its president and manager; that no other officer or person connected with the bank had anything to do with the purchase of said notes and did not know thereof and had no notice or knowledge of any facts that would invalidate said notes in the hands of said Boesel; and further that the bank purchased said notes for value and before maturity, and was an innocent holder in1 due course, unless the knowledge of¡ 'Boesel was in law to he imputed to the hank.
“The record discloses that the bank did not concede the fraud or want of consideration' alleged; only that the evidence offered by defendants tended to support the allegation of the answer on these issues,” and therefore made such issues a matter for determination by the jury, unless the knowledge of Boesel could not be imputed to the bank when the bank purchased the notes of said Boesel.
Counsel on both sides have been more than usually diligent in searching the cases more or less1 analogous to the case at bar. The results of their inquiry together with the research of the court disclose a rather wide diversity of opinion. Asr to cases of this character it is unnecessary as it' probably is impossible to attempt to reconcile-alt *438 the numerous decisions. The question is largely a new one in Ohio.
A corporation can act only through its officers and agents, and the cases all agree on the elementary proposition that the acts of the agent within the scope of his agency are at once the acts of his principal, and obviously the knowledge of such agent in the doing of such act bec'omes the knowledge of his principal.
This general rule is admitted and adopted by practically all the courts, and if it shall apply in this case the acts and knowledge of Boesel, as president and active manager of the bank and hence its agent in purchasing said notes from Boesel the individual, become and are the acts and knowledge of the bank.
It is claimed, however, by plaintiff in error that this rule is no more generally recognized than certain well-known exceptions to the rule coming under a peculiar state of facts which plaintiff in error contends are identical with the state of facts in this case, to-wit, that notice or knowledge on the part of the agent will not be imputed to the principal where the agent’s relations to the subject-matter, his previous conduct, or his adverse interests render it certain that he will not disclose such knowledge. In such cases the presumption is that the agent will conceal any fact which might be detrimental to his own interest. This doctrine is sustained in Mechem on Agency, Section 721 et seq.; Koehler v. Dodge, 31 Neb., 328; Buffalo County Natl. Bank v. Sharpe, 40 Neb., 123; Benton v. German-American Natl. Bank, 122 Mo., 332; Merchants’ Natl. Bank v. Lovitt, 114 Mo., 519, *439 21 S. W. Rep., 825; Bank of Overton v. Thompson, 118 Fed. Rep., 800, 56 C. C. A., 554; and numerous other cases cited in the notes.
The doctrine of this exception was very aptly and fully stated in one of the leading cases, Innerarity v. Merchants’ Natl. Bank, 139 Mass., 332, as follows: “While the knowledge of an agent is ordinarily to be imputed to the principal, it would appear now to be well established that there is an exception to the construction or imputation of notice from the agent to the principal in case of such conduct by the agent as raises a clear presumption that he would not communicate the facts in controversy, as where the communication of such a fact would necessarily prevent the consummation of a fraudulent scheme which the agent was engaged in perpetrating.”
Mechem in his excellent work on agency lays down the rule in the following apt and accurate language: “It is a general rule, settled by an unbroken current of authority, that notice to an agent while acting within the scope of his authority and in reference to a matter over which his authority extends, is notice to the principal.
“In respect to this rule two important elements will be noticed. The first of these is that the notice or knowledge, which will affect the principal, is that only which is possessed by the agent while he is agent, and while he is acting within the scope of his authority. * * *
“The second element is that the notice or knowledge, which shall be imputed to the principal, is that only which relates to the subject-matter of that agent’s authority, or, in other words, is that *440 only' which. relates to the business or transaction in reference to which that agent is authorized to act by and for the principal.
“Two general theories prevail as to the foundation upon which this rule is based, and the results, of these respective theories are not entirely alike.. The first finds the reason of the rule in the legal-identity of the agent with the principal, in the fact •that the agent, 'while keeping within the scope of his authority, is, as to the matter embraced within it, for the time being the principal himself, or, at all events, the alter ego of the principal—the principal’s other self. Whatever notice or knowledge, then, reaches the agent under these circumstances, in law. reaches the principal. .* * *
“The other theory is based upon tlie rule that it is the duty of the agent to disclose to his principal, all notice or knowledge which he may possess and which is necessary for the principal’s protection' or. guidance. This duty the law presumes the agent to have performed, and, according to" the view now being considered, imputes to the principal whatever notice or knowledge the agent then possessed, whether he has in fact disclosed it or not.”
Mechem goes on to say: “The theory based upon the legal identity of' the parties, and limiting the application of the rule to such notice or knowledge as was acquired during the agency, was at first adopted in the English courts, and has since been followed'by the. courts of many of the United States. The other theory, however, based upon the duty of the agent to disclose to his .principal all knowledge and information possessed *441 by the agent in relation to the subject-matter of the agency, and therefore charging the principal with it, has since been firmly established by the English courts, and has been adopted by the supreme court of the United States, and by many of the states.”
In determining the rule of law that shall apply in this case, in the interest of sound morals, the public welfare and honest business, this court has a most important duty to perform.
To-day probably ninety per cent, of the country’s business is conducted or controlled by the corporation. It is not only a business convenience but a business necessity. Its business cannot be conducted by the invisible, intangible, incorporeal body known in the law, but must be conducted by its officers and agents as known to the public.
The agent when duly authorized to act stands in the shoes of his principal for the purposes of the corporation as the principal must be held to stand in the shoes of the agent for the protection of the public.
There is a full and complete merger of identity, a oneness in action and knowledge, of principal and agent. If there be- that legal identity as to the act of the agent in behalf of his principal, it must follow by a parity of reason and right that there be that same legal identity as to the agent’s acquired knowledge in the doing of the principal’s act, and, if so, why should there be either occasion or duty on the part of the agent to communicate the knowledge to his principal—which knowledge by virtue of said identity between agent and principal the principal must be conclusively presumed *442 to have? Or, as Mechem has said: “Whatever*^ notice or knowledge, then, reaches the agent under these circumstances [matters within the scope of his authority], in law reaches the principal.” Boesel as manager of the bank cannot unknow what Boesel the man all the while knew.
This case is distinguishable from many of those cited in the plaintiff in error’s brief, for several reasons.
The agency of Boesel as president and active manager of the bank is admitted; second, what he did as such agent was fully authorized by the bank. This is conclusively established by the fact that the bank at no time repudiated the transaction or questioned the agent’s. authority, but on the contrary continued to hold said notes, brought suit upon them and is now prosecuting error for a reversal of the judgment below.
Again. In this case it is admitted not only that Boesel as president and active manager of the bank was fully authorized as such to purchase the notes, but that no other person, officer, committee or board of directors needed to take any action whatsoever to complete such purchase.
Again. This is a case in contract, whereas many of the cases cited are those of tort.
In the Innerarity case, supra, largely relied on by plaintiff in error, B. was merely a director of the bank. The loan in question was not made by B. He had no authority to make it, but it was passed upon and approved by a board of directors, who, as such board, it was claimed, had no knowledge of the fraud, though B. was present as a member of such board. In an action for tort or *443 wrongful conversion, the knowledge of B. was not imputed to the bank. So that this case may be distinguished by these two facts: First, B. was not fully authorized in and of himself to make the loan; second, the action was one in tort.
As to the second leading case, urged by plaintiff in error, Bank of Overton v. Thompson, supra, it may be said that Thompson and Hardinger were engaged in a partnership transaction, using the bank as their depository. Hardinger appropriated the moneys of the partnership entirely to his Own use, and suit was brought to recover from the bank for the partnership money wrongfully converted by Hardinger. This not only sounded in tort but was a transaction in which the bank was merely acting as bailee or agent of the parties. It surely does not come within the facts of the case at bar, where we have the bargain and sale of a note, by contract, by a duly authorized agent of the banking corporation.
Manifestly, in a case sounding in tort there would be no presumption in law that the wrongful act of the agent was the act of the principal unless actual authority to do the act was proven or a subsequent ratification after all the facts and circumstances of the act were known. No man is presumed to do wrong. There is in fact, in law and in good morals a reason for the distinction that there may not be that legal identity between principal and agent in a case of tort that there is in a case of contract.
In a case of contract, as in the case at bar, there is no need of communicating knowledge, because the principal in law is already conclusively *444 presumed to have that knowledge. The principal’s liability does not depend upon the agent’s duty to communicate, or the likelihood that he will communicate, his knowledge to the principal, but upon the fact that the agent is the alter ego of the principal, acting for the principal, and knows that his acts and knowledge ipso facto become the knowledge and acts of the principal.
This doctrine of liability based upon the legal identity of the parties is in the main sustained by a number of cases: Messick & Co. et al. v. Roxbury & Wilcox, 1 Handy, 190, 191; Craige et al. v. Hadley, 99 N. Y., 131, in which the following is a part of the opinion: “Notice to an agent of a bank entrusted with the management of its _ business is notice to the corporation in transactions conducted by such agent acting for the corporation, in the scope of his authority, whether the -knowledge of the agent was acquired in the course of the particular dealing or on some prior occasion.”
In Holden v. New York & Erie Bank, 72 N. Y., 286, the court in speaking of the duties of the chief managing officer of a bank say: “As a matter of fact, whatever knowledge, information or notice, Ganson had in either of these capacities [managing officer of the bank, individual, or executor], he carried with him into his exercise of the other. As agent of the bank, he' owed it a duty in every transaction in which the bank took a part, under his observation. Hence, as á matter of law, whatever notice of facts he had .in any capacity, which were material in the performancé by him on the part of the bank in any transaction,' *445 .became notice tó the bank, his principal, as it was his duty to give it notice thereof in that matter. It is the rule, that the knowledge of the agent is the knowledge of his principal, and notice to the agent of the existence of material facts is notice .thereof to the principal, who is taken. to know everything about a. transaction which his agent in it knows.”
National Security Bank v. Cushman, 121 Mass., 490: “If a director of a bank, who acts for the bank in discounting a note, has knowledge that the note was procured by fraud, the bank is affected •with his knowledge.”
Even in the Innerarity case, supra, the court in its opinion uses this language: “A bank or other corporation can act only through agents, and it is generally true that, if a director who has knowledge of the fraud or illegality of the transaction, acts for the bank, as in discounting a note, his act is that of the bank, and it is affected by his knowledge.”
In First National Bank v. Blake, 60 Fed. Rep., 78: “A large number of cases are cited in support of this view, and it is well settled that an officer or agent, dealing with a corporation or his principal on his own account, is not presumed to communicate knowledge which it would be to his interest to conceal, and the corporation or principal is not chargeable with such knowledge. But there is no room for the application of this principle where the agent is the sole representative of both parties in the transaction. If Cornish was the sole representative of the bank in the transaction with himself, there was no one from whom infor *446 mation could have been concealed, or to whom it could have been communicated. If he was the sole representative of each party, each must have had equal knowledge.”
To the same effect is Brobston v. Penniman, 97 Ga., 527. Latter case distinguished in English-American Loan & Trust Co. v. Hiers, 112 Ga., 823.
To hold otherwise would open the widest possible door for all sorts of fraud; the more atrocious and aggravated the fraud the less the likelihood of fixing the liability upon the principal. Why? Because the agent would be the less likely to communicate the fact to the principal. Such a holding has no place in sound business or good morals and ought not to be encouraged by our courts.
There was clear error in the trial court sustaining the motion, and the judgment of the circuit court reversing the judgment of the' court of common pleas is hereby affirmed and the cause remanded to the court of common pleas for a new trial and for such other and further proceedings as are agreeable to law.

Judgment affirmed.

Johnson, Donahue, Newman and Wilkin,, JJ., concur. Nichols, C. J., and Shauck, J., not participating.