[Tatum v. Commercial Bank & Trust Co. and
Commercial B. & T. Co. v. Tatum.]

# Tatum *v.* Commercial Bank & Trust Co. and Commercial B. & T. Co. *v.* Tatum.

### *Assumpsit.*

(Decided June 3, 1915. Rehearing denied July 2, 1915.
69 South. 508.)

1. *Bills and Notes; Principal; Endorser; Discharge.*—A bank holding notes endorsed to it by a payee who was the principal debtor, knowing that they had been made by defendant for the payee's accommodation before they acquired them, and which, after the notes were due and payable by said payee, failed to apply the payee's deposit, sufficient to pay the notes, to their payment, thereby discharged the accommodation maker.

2. *Banks and Banking; Deposit; Lien; Application to Debt of Depositor.*—A bank has a right to set off as for the balance of a general account of a depositor, a general deposit, and although as long as that balance is in the depositor's favor, the bank has no lien upon it, yet when the bank makes any advance on loans to such depositor in the form of an overdraft, etc., the lien against the deposit comes into existence, and it may be applied by the bank to the payment of the depositor's indebtedness until it is fully discharged.

3. *Appeal and Error; Harmless Error; Pleading.*—It was harmful error to sustain a demurrer to a plea presenting a good defense to an action on notes if it prevented defendant from introducing evidence as the effect was to rule that such evidence would not be admissible because there was no such issue and that even if it had been proven or conceded, it would be no defense.

4. *Pleading; Allegation and Proof.*—Since proof without allegation is an unavailing as allegation without proof, proof of the allegations of a plea by consent after the sustaining of a demurrer thereto would be unavailing as there was no such issue presented.

5. *Bills and Notes; Release of Payee; Discharge of an Endorser.*—Where the bank knew when it acquired the notes from a payee that the defendant was an accommodation maker, and in legal effect only a surety thereon, and the bank held collaterals of the payee sufficient to pay the notes, and released such collateral, or negligently allowed it to be withdrawn or appropriated, without the consent or fault of the surety, it thereby released the surety.

6. *Pleading; Demurrer; Admissions.*—The facts well pleaded must be accepted as true when attacked by demurrer.

7. *Bills and Notes; Law Governing; Place of Contract.*—Notes made in Kentucky and payable there are governed by the laws of that state.

[Tatum v. Commercial Bank & Trust Co. and
Commercial B. & T. Co. v. Tatum.]

8. *Statutes; Foreign; Pleading.*—Where the action is on a promissory note made and to be performed in a foreign state, any statutory laws of such a state, to be availing in an action in this state, should be alleged and proven.

9. *Banks and Banking; Officers; Notice to; Fraud or Interest.*—The defendant here executed certain notes payable to W. and W., endorsed them in blank to the bank. It appeared that the notes had been given in a transaction carried out as part of a conspiracy between the president of the bank and W., whereby W. was receiving accommodation from the bank for which he was paying the bank president personally, in fraud of the bank, but that defendant endorser, when he made the notes for the accommodation of W., had no notice of such conspiracy, and the notes were not made by him in furtherance of the fraudulent conspiracy. Held, that notice to the president that defendant had signed the notes as an accommodation to W. and that his liability was that of a surety and not that of a principal debtor, was notice thereof to the bank, despite the fact of the president's interest in the transaction; he being the sole representative of the bank in the transaction.

10. *Principal and Agent; Notice to Agent; Effect.*—Notice or knowledge to an agent, while acting within the line or scope of his authority in connection with the principal's business is notice to the principal, although the principal is not chargeable with the knowledge of the agent when the agent is engaged in committing an independent fraudulent act, and the notice relates to such fraudulent act.

11. *Bills and Notes; Action; Pleading.*—Where the notes sued on were made by defendant for the accommodation of the payee and were endorsed by the payee to the bank suing, and the defendant endorser pleaded that he had made the notes for the accommodation of W., and that his liability was only that of a surety, and that because of the bank's failure to apply the deposit of W. to the payment of the note, defendant had been released, the fact that the deposit of W. was special, and could not therefore be applied to the payment of the notes sued on, should have been set up by replication to the plea.

APPEAL from Montgomery Circuit Court.

Heard before Hon. W. W. PEARSON.

Assumpsit by the Commercial Bank & Trust Company against Howell Tatum. Judgment for plaintiff, and defendant appeals; plaintiff also takes cross-oppeal. Reversed and remanded on the main appeal, and affirmed on the cross-appeal.

CHARLES L. HAROLD, and RUSHTON, WILLIAMS & CRENSHAW, for appellant:

GUSTAVE F. MERTINS, for appellee.

MAYFIELD, J.—This is the second appeal in this case. See report of former appeal, 185 Ala. 249, 64 South. 561, for a statement of the issues, facts, and law of the case on that appeal. The issues and facts shown by the record of this appeal are, to some extent, the same as on the former appeal, and some questions of law are raised again on this appeal. As to these questions, we see no reason to change, on this appeal, the rulings announced on the original appeal, as we still deem them correct.

The action was on 33 promissory notes, payable to L. B. Williamson, aggregating, with interest, more than $10,000. The notes appear to have been executed at the same time, and to mature at different dates, the first on June 14, 1911, and the last September 30, 1911, each payable four months after date. It is averred that each of said notes was dated at Louisville, Ky., being negotiable and payable at the Commercial Bank & Trust Company, that each bore interest from date of execution at the rate of 6 per cent. and that each of said notes was past due and unpaid, and was the property of the plaintiff, having by the payee therein been indorsed in blank, and the plaintiff having become the purchaser of each of them in due course for value received and before maturity. The recitals of the record as to the issue or issues upon which the trial was had are as follows: "The plaintiff, with leave of the court, amends his complaint, and then demurs to pleas numbered 7, 8, 9, 10, 12, 13, 14, and 15, and said demurrer being understood by the court, it is considered by the court, and it is the judgment of the court, that said demurrers be sustained as to pleas numbered 7, 8, 9, 10, 12, 13, and 14, and overruled as to No. 15, and there-

upon the plaintiff files replication to plea No. 15, and thereupon issue was joined between plaintiff and the defendant."

The record shows that five special replications were filed to this plea, but no general one. There appears in the record a demurrer to these replications, but it does not appear to have been filed, and there appears to have been no ruling thereon; hence it cannot be considered on the appeal.

(1, 2) The first error insisted upon is in sustaining plaintiff's demurrer to plea 14, which plea was as follows: "Comes the defendant, and for answer to the complaint as amended says that the several notes which are the foundation of this suit were signed by the defendant in blank and delivered to L. B. Williamson, whose name appears on each of said notes as payee, for the accommodation of said Williamson, and said notes matured variously on dates ranging from October 14, 1911, to January 30, 1912, and that after the maturity of all of said notes the plaintiff had funds of the said Williamson in its possession in amount larger than the sum, with interest, sought to be recovered in this cause, but it allowed said Williamson, without defendant's consent, to withdraw said funds in an amount larger than the sum, with the interest, sought to be recovered in this cause, and plaintiff had notice of the accommodation character of said notes at the time it acquired the same; and defendant further avers that he did not receive any of the consideration for said notes paid by the plaintiff, if such consideration there was; that the said Williamson has become insolvent since the said funds were withdrawn from the bank. Wherefore the defendant says he was and is discharged from all liability by reason of any and all of said notes."

The demurrer contained a number of special grounds. Those important to be considered were that: "(3) Said plea fails to set up that Williamson was not otherwise indebted to plaintiff in sums other than as indorser of the notes here sued on.

"(4) Said plea fails to set out any duty on the part of the plaintiff to apply said alleged funds to these particular notes.

"(5) Said plea does not show the state of the account of Williamson with plaintiff as to debits and credits at any particular time.

"(6) The defendant, under the pleading, was and is the party primarily liable under the Negotiable Instruments Law.

"(7) Said plea shows that said alleged deposit and withdrawal was as to defendant res inter alios acta."

We do not think this plea was subject to any of the grounds of demurrer assigned, and our statute limits us to a consideration of those only which are assigned. We do not mean to say, however, that it is or is not subject to successful attack on any ground. The plea showed that the defendant was not the principal debtor, but signed each of the notes for the accommodation of the payee; that the plaintiff, at the time of the execution of the notes and before it acquired the notes, had knowledge of the fact that this defendant maker was not a principal, but that he signed the notes for the accommodation of the payee; that after these notes were due, and should have been paid by the principal, the principal had on deposit in that bank money sufficient to pay the notes; and that the plaintiff bank failed to so apply the deposit to the payment of the notes past due. The reasoning applicable to the facts stated in this plea, is thus stated by Mr. Morse in his book on

[Tatum v. Commercial Bank & Trust Co. and
Commercial B. & T. Co. v. Tatum.]

Banks and Banking: "If the bank, at the maturity of a note held by it, holds funds that, by the scratch of a pen, it could apply upon the note, thus securing itself, it is difficult to see why neglecting so easy a means of security is not as improper as giving up collateral expressly designated for the purpose of securing the note."—2 Morse on Banks and Banking (3d Ed.) § 563.

This was approved by the Kentucky court in the case of *Pursiful v. Pineville Banking Co.*, 97 Ky. 154, 30 S. W. 203, 53 Am. St. Rep. 409, and by the Indiana court in the case of *Bank v. Hill*. 76 Ind. 223, 40 Am. Rep. 239. A note to the report of the *Kentucky Case,* 53 Am. St. Rep. 414, thus sums up the holdings of other cases: "When a bank is a bona fide holder of a note at its maturity, and also holds funds of the maker, it is bound to consider the interests of the indorsers or sureties, and to apply such funds to the payment of the note. If it allows the maker to withdraw his funds after protest, causing the indorsers to lose thereby it is liable to them.—*Mechanics', etc., Bank v. Seitz,* 150 Pa. 632 [24 Atl. 356], 30 Am. St. Rep. 853, and note. A bank, holding a depositor's note past due, is entitled to set it off against the amount due him upon his deposit account, and is therefore under no obligation to pay his check drawn against such account, if it is exhausted before the check is presented by charging against it the amount of such note.—*Bank v. Windishchmulhauser Brewing Co.,* 50 Ohio St. 151 [33 N. E. 1054], 40 Am. St. Rep. 660, and note. See, also, the extended note to *National Bank v. Smith* (N. J.) 23 Am. Rep. 50.

"In an action by a bank against sureties on a promissory note discounted by it, it is no defense that before maturity the principal directed the bank to pay

the note at maturity out of his general deposit in the bank, that the bank failed to do so, and subsequently allowed the principal to check the money out of the bank, although it knew of the suretyship at all times, and deposit was sufficient to pay the note.—*Second Nat. Bank v. Hill,* 76 Ind. 223, 40 Am. Rep. 239. See, also, the case of *National, etc., Bank v. Peck,* 127 Mass. 298, 34 Am. Rep. 368."

That a bank may so apply deposits has been decided by this court. In the case of *Wynn, Adm'r, v. Tallapoosa County Bank,* 168 Ala. 489, 53 South. 228, it is said: "As to a general deposit the bank has a right to set-off as for the balance of the general account of the depositor, and of course so long as that balance is in favor of the depositor the lien or right has neither existence nor validity; but the moment any advance or loan by the bank is made to the depositor—in the form of an overdraft, a discount, acceptance, etc.—then the lien or right is born, and may be applied by the bank (and the bank only) to the payment of such indebtedness till it is fully discharged.—Morse on Banks and Banking, §§ 324, 334; *Lehman's Case,* 64 Ala. 567; *Dean v. Allen,* 8 John. (N. Y.) 390."

This court has also decided that the failure of the bank to so apply the deposit discharges the surety. In the case of *White v. Life Association, etc.,* 63 Ala. 430, 35 Am. Rep. 45, it is said: "In *McDowell v. Bank,* 1 Har. (Del.) 369, the creditor, a bank, had on general deposit moneys of the principal, sufficient to pay the debt, but permitted the principal, from time to time, after maturity of the debt, to withdraw them by checks, and the surety was held discharged. The same principle is recognized in *Dawson v. Real Estate Bank,* 5 Ark. 296-299. The cases of *Martin v. Merchants' Bank,*

6 Har. & J. [Md.] 235, and *Voss v. German Am. Bank,*
83 Ill. 599 [25 Am. Rep. 415], assert the contrary doc-
trine. Assuming, as we think it must be assumed, that
a bank has a lien on any balance which may be due
from it to a customer, on any moneys he may have on
general deposit—not moneys deposited for special pur-
poses, of which the bank is informed, and either ex-
pressly or impliedly consents to hold it for such pur-
poses—for the payment of a debt due to it for money
borrowed or for a debt negotiated to it in the usual
course of trade, we incline to the opinion that it can-
not pay such balance, or such moneys, to the principal,
without discharging the surety. It has not the option
to part with the security it has acquired without the
consent of the surety."

(3, 4) It is insisted by appellee that, if sustaining
the demurrer could be said to be error, it was error
without injury, because the defendant failed to prove
and could not have proved, the facts alleged. We can-
not agree with appellee as to this insistence. Sustain-
ing the demurrer prevented the defendant from even
introducing evidence, or rather ruled that such evi-
dence was not, or would not be, admissibile, because
no such issue was in the trial, and that, if it had been
proven or conceded, it would be no defense. If the de-
fendant had proven the plea by consent, the proof would
not have been availing, because there was no such al-
legation or issue. Proof without allegation is as impo-
tent as allegation without proof.

(5, 6) For the same reason pleas 12 and 13 stated
good defenses to this action. These pleas alleged that
defendant was in legal effect a surety on the notes, and
that this was known to the plaintiff when it acquired
the notes, and that the plaintiff held collateral secur-

ity of the principal debtor sufficient to pay these notes, and that it released the collateral, or negligently allowed it to be withdrawn or otherwise appropriated, without the consent or the fault of the defendant surety. If these facts were true, and on demurrer they must be so accepted, then the defendant surety was discharged from liability on the notes as such surety. This proposition is so well settled that it needs no citation of authorities.

(7, 8) It is insisted by appellee, and must have been the view of the trial court, that this rule of law did not apply to this case, because the notes were governed by the Uniform Negotiable Instruments Law, and not by the common law merchant. Without deciding whether or not this rule of law would apply, if the case was brought within the statute of Uniform Negotiable Instruments, it is sufficient to say that the complaint does not allege that any such statute exists in Kentucky, on the law of which state the decision of this case must depend, because the contract was both made, and to be performed in that state. If such a statute existed in Kentucky when the contract sued upon was made, then it should have been alleged, as well as proven, to be availing.—*L. & N. R. R. Co. v. Cook*, 168 Ala. 600, 53 South. 190. We cannot treat the ruling on demurrer as by what is, or is not, shown by the evidence, when there was no allegation as to the matter.

(9, 10) The plaintiff claims that it is not chargeable with notice that defendant was merely an accommodation indorser, or of other defenses set up to this action, because the transactions as to the making of the notes and the discounting of the same were had with its president, one Jones, and that Jones and the payee, Williamson, were engaged in a conspiracy to defraud

the defendant bank, in that Williamson was· paying
Jones large sums of money to purchase or pay for accom-
modations which the bank was rendering as discount-
ing his notes and lending him money, and that on this
account the president of the bank had personal inter-
ests in the transactions adverse to the interest of the
bank, and that for this reason the bank was not charge-
able with notice given to the president in these mat-
ters, and was not bound by any knowledge which Jones
held or acquired in the execution or discounting of
the notes sued on. It is not claimed, however, that these
particular notes were made or discounted by the bank,
for the purpose of paying Jones for accommodations
received at the hands of the bank; but it is claimed, or
seems to be claimed by the bank, that the transactions
as to these notes were a part of the accommodations
which Williamson was receiving from the bank, and for
which he was otherwise paying the president person-
ally.

This alleged conspiracy between Jones, the president,
and Williamson, the payee of the notes, was attempted
to be shown by proof of conversations between the two,
and by declarations of each, and by the circumstance
that checks from Williamson to Jones for large amounts
passed through the bank each month for a long while.
The defendant, appellant here, objected to the intro-
duction of each and all of these circumstances and facts,
and excepted to the action of the court in admitting
such proof of each of such circumstances or facts to
go to the jury.

We are of the opinion that the trial court was in
error in these rulings. If it had been shown, or if there
was any evidence from which it could be inferred, that
this defendant had any knowledge or notice of this

conspiracy to defraud the bank, and this transaction
was a part of it, or was had in furtherance of the fraud-
ulent scheme or purpose, then such evidence might be
admissible to show that the bank ought not to be bound
by the knowledge or notice of its president, which no-
tice or knowledge he received in perfecting his scheme
to defraud the plaintiff bank. We are unable to find
in this record any evidence, direct or inferential, to the
effect that this defendant had, or was chargeable with
notice or knowledge of any such conspiracy or fraudu-
lent arrangement between Jones and Williamson to
defraud the plaintiff bank, or that Jones, in his deal-
ings or conversations with this defendant, or with Wil-
liamson, as to the execution or discounting of these
notes, was acting for the benefit of himself or William-
son, and not for the benefit of the bank. He was ap-
parently and ostensibly representing the bank, and not
himself or Williamson; the bank acquired the notes
and claims them as its own. Jones was the bank's sole
and only representative in the matter, and it is claim-
ing the fruits of the transaction. If Jones was a ras-
cal and a grafter, as plaintiff claims he was, he was
the plaintiff's rascal and grafter, and not the defend-
ant's. The plaintiff had employed him to represent it
in these matters, and held him out to the public for
this purpose, inviting them to deal with him as its
agent in all matters of this kind. So far as this rec-
ord shows, defendant was one of the public who dealt
with him as such agent and sole representative of the
bank in the matter. It was while Jones was thus act-
ing in the stated capacity that he acquired the knowl-
edge and was notified that defendant was signing pure-
ly as an accommodation indorser, and that his liability
and rights in the matter were those of a surety, and

not those of a principal debtor; and the bank ought
not to be allowed to avoid the burden of being charge-
able with the notice and knowledge which its president,
agent, and sole representative acquired in negotiating
and consummating the loan or discount, even though
it be conceded that the agent was violating the trust
imposed by the principal, and was then carrying out
a part of a scheme to defraud his principal. As before
stated, if the suit was against Williamson, or if it was
shown that this defendant had, or was chargeable with,
notice or knowledge of the fraud intended on the part
of the conspirators, then the rule is, and ought to be,
different. The defendant then woud be in the position
of having aided or abetted Jones and Williamson in
their fraudulent scheme, and he would not be allowed
to profit thereby.

How is a corporation to be charged with notice or
knowledge of extrinsic facts, except through its agents
or officers? If the agent or officer who has the notice
or knowledge of the extrinsic fact is the sole person
or agency by which the corporation is represented in
the matter, this notice to or knowledge of such agent
or officer must of necessity be notice to or knowledge
of the corporation, or it cannot have such notice or
knowledge, or even be chargeable therewith. Conse-
quently it is the settled law that corporations are
chargeable with notice or knowledge acquired by their
sole agent and representative in a given transaction in
which such agent represents the corporation, although
he may also have an individual or personal interest in
the transaction, and he thereby promotes this person-
al interest. This forms a limitation upon, or qualifica-
tion of, the exception to the rule that a corporation is
not chargeable with, or bound by, notice to or knowl-

edge of its agent or officer, when he is acting for himself, and not the corporation, or when he has an individual interest in the matter adverse to that of the corporation. The trial court overlooked this limitation upon, or qualification of, the exception, in its instruction to the the jury. In part the jury were instructed as follows: "Now, genetlemen, the issue in this case, as the court understands it, is whether or not the bank had notice of the infirmity which the defendant here says existed with respect to these notes. Now the plaintiff invokes this doctrine, that although the president of the bank was acting for it and actively its official head, yet nevertheless, if he, at the time he received notice with respect to these notes, had an interest in them adverse to the interest of the bank, and was acting for the conservation of his interest, and not for the bank, then the bank is not charged with such notice as he may have received; and that is a correct proposition of law. A corporation must do its business through agents, and no corporation is chargeable with the false and fraudulent act of its agent in furthering his adverse interest as against the interest of the bank. So here, if you are reasonably satisfied from this evidence that Jones at the time of this transaction had an interest adverse to the interest of the bank, and that he was acting in furtherance of a scheme that would help him (Jones), and not in behalf of the bank, then the bank is not chargeable with notice which he may have received in that behalf."

The trial court evidently attempted to follow the long list of cases which form an exception to the general rule that the corporation is not so chargeable with knowledge of its agents or officers, if the agent or officer has an individual interest in the matter adverse to

that of the corporation. We have a long line of these
cases, many of which are cited in the brief of appellee.
But this exception has a qualification or limitation as
to cases like the one on trial; that is, where the cor-
poration has no other agency or representative in the
matter, and the party asserting the knowledge or no-
tice on the part of the corporation is guilty of no neg-
ligence or fault in the transaction. The general rule
as announced by text-writers, and repeatedly approved
by this court, is that whatever notice or knowledge
reaches the agent while he is acting within the line and
scope of his authority, in connection with the princi-
pal's business and as to matters over which his author-
ity extends, also reaches the principal.—Mechem on
Agency, §§ 719, 721. Mr. Mechem has an excellent state-
ment of the rule, and of the reasons therefor, as fol-
lows, and is quoted with approval in many cases. See
recent case of *Bank v. Burns,* 88 Ohio St. 434, 103 N.
E. 93, 49 L. R. A. (N. S.) 768.

There is, however, a well-recognized exception to this
general rule of the liability of the principal as for
knowledge or notice reaching the agent, while acting
within the line and scope of his authority. That ex-
ception is that the principal is not so chargeable with
such notice of the agent when the latter is engaged in
committing an independent fraudulent act, and the act
or knowledge to be imputed relates to this fraudulent
transaction.—1 Am. & Eng. Ency. Law (2d Ed.) p.
1145, and authorities there cited. Mr. Pomeroy doubts
whether this exception applies to the managing officers
of a corporation.—2 Pom. Eq. Jur. (3 Ed.) § 675,
note 1. Some courts have declined to share this doubt
with Mr. Pomeroy. See *Brookhouse's Case,* 73 N. H.
368, 62 Atl. 219, 2 L. R. A. (N. S.) 993, 999, 111 Am.

St. Rep. 623, 6 Ann. Cas. 675.   However, the great
weight and number of the courts assert positively, and
decide, that the exception does not apply to the man-
aging officers of corporations, through whom alone the
corporation can and does act in doing the particular
thing with which the corporation is sought to be
charged. The decisions and cases are reviewed and ex-
amined in note to *Brookhouse's Case*, 2 L. R. A. (N.
S.) 993. In this note it is said in part, after citing
many cases holding that the exception does apply in
some cases as to which Mr. Pomeroy expressed a doubt:
"There is, however, good authority, if not the weight
of authority, in favor of a qualification of the foregoing
exception, so as to exclude therefrom, and therefore
to bring within the general rule which charges the prin-
cipal with knowledge possessed by the agent, cases
where the officer, though he acts for himself or for a
third person, is the sole representative of the corpor-
ation in the transaction in question. None of the cases
above cited expressly denies, and few of them are nec-
essarily inconsistent with, the existence of such qual-
ification to the exception; and some of them—e. g.,
*English-American Loan & T. Co. v. Hiers*, 112 Ga. 823
[38 S. E. 103], *National Bank v. Feeney* [9 S. D. 550,
70 N. W. 874, 46 L. R. A. 732], and *Commercial Bank
v. Burgwyn* [110 N. C. 267, 14 S. E. 623, 17 L. R. A.
326]—expressly admit the qualification. By reason of
such qualification the application of the exception was
denied in *Brobston v. Penniman*, 97 Ga. 527, 25 S. E.
350, holding that a bank was chargeable with knowl-
edge of its president and cashier that the proceeds of
the note of a firm, of which they were members, were
to be used for their private purposes, and not for the
purposes of the firm, they having represented the bank

[Tatum v. Commercial Bank & Trust Co. and
Commercial B. & T. Co. v. Tatum.]

in making the loan and taking the note. So, in *Morris
v. Georgia Loan, Sav. & Bkg. Co.,* 109 Ga. 12, 34 S. E.
378, 46 L. R. A. 506, where the cashier of a bank, as
an individual, had an interest in a promissory note
which he knew was given without consideration, and,
as cashier, discounted the note without reference to, or
consultation with, any other officer of the bank, it was
held that the bank was not a bona fide purchaser of
the note, without notice."—2 L. R. A. (N. S.) 994.

"The authorities, therefore, lend support to two quali-
fications of the exception applied in *Brookhouse v.
Union Pub. Co.*: (1) That the exception does not apply
when the officer of the corporation, though he acts for
himself or a third person, is also the sole representa-
tive of the corporation in the transaction. This quali-
fication, as applied by the cases, is not at all depend-
ent upon the question whether or not the corporation
would be benefited by the transaction as a whole, if
the knowledge possessed by its officer were held not to
be chargeable to it. (2) That the exception does not
apply where the corporation, even if it were held not
to be chargeable with notice of the fraud of its officer,
would, as a result of the whole transaction, be in a
better position, etc."—2 L. R. A. (N. S.) 996.

The latest case we find on the subject is *Bank v.
Burns,* 88 Ohio St. 434, 103 N. E. 93, 49 L. R. A. (N. S.)
764. In the opinion in this case, which was a suit by
a bank against the maker of a note, and in which the
defense was the fraud of the president of the bank
in regard to the note (as in this case) and the fact that
he was adversely interested in the matter, and the sole
question was the exact question here under considera-
tion, it is decided that: "A corporation can act only
through its oficers and agents, and the knowledge of

such officers and agents in the transaction of the corporation's business within the scope of their authority becomes at once the knowledge of the corporation, without any actual or presumptive communication from agent to principal.

"Where the officer is acting both for himself as an individual and as manager of a banking corporation in the purchase of a note from himself by the bank, and his action in that behalf is adopted and ratified by the bank, the manager's knowledge as a man is equally his knowledge as manager of the bank. He cannot unknow as manager what he knows as man. To hold otherwise would be to promote fraud rather than prevent it."

The indicated authorities were then quoted as follows: "Mechem, in his excellent work on Agency, lays down the rule in the following, apt and accurate language: 'It is a general rule, settled by an unbroken current of authority, that notice to an agent while acting within the scope of his authority, and in reference to a matter over which his authority extends, is notice to the principal. In respect to this rule two important elements will be noticed. The first of these is that the notice or knowledge which will affect the principal is that only which is possessed by the agent while he is agent, and while he is acting within the scope of his authority. * * * The second element is that the notice or knowledge which shall be imputed to the principal is that only which relates to the subject-matter of that agent's authority, or, in other words, is that only which relates to the business or transaction in reference to which that agent is authorized to act by and for the principal. Two general theories prevail as to the foundation upon which this rule is based, and the re-

sults of these respective theories are not entirely alike. The first finds the reason of the rule in the legal identity of the agent with the principal—in the fact that the agent, while keeping within the scope of his authority, is, as to the matters embraced within it, for the time being the principal himself, or, at all events, the alter ego of the principal, the principal's other self. Whatever notice or knowledge, then, reaches the agent under these circumstances, in law reaches the principal.' "—49 L. R. A. (N. S.) 768.

"It is well settled that an officer or agent dealing with a corporation or his principal on his own account, is not presumed to communicate knowledge which it would be to his interest to conceal, and the corporation or principal is not chargeable with such knowledge. But there is no room for the application of this principle where the agent is the sole representative of both parties in the transaction. If Cornish was the sole representative of the bank in the tranasction with himself, there was no one from whom information could have been concealed, or to whom it could have been communicated. If he was the sole representative of each party, each must have had equal knowledge."— *First Nat. Bank v. Blake* (C. C.) 60 Fed. 79, 49 L. R. A. (N. S.) 770.

See our case of *Bank v. Allen,* 100 Ala. 476, 483, 14 South. 335, 27 L. R. A. 426, 46 Am. St. Rep. 805.

"To the same effect is *Brobston v. Penniman,* 97 Ga. 527, 25 S. E. 350. The latter case is distinguished in *English-American Loan & T. Co. v. Heirs,* 112 Ga. 823, 38 S. E. 103."—49 L. R. A. (N. S.) 770.

To hold otherwise would open wide the door to all kinds of fraud; and the more atrocious and aggravated the fraud, the less would be the likelihood of fixing the

liability upon the principal, because the agent would be less likely to communicate the fact to the principal. Such holding has no place in sound business or good morals, and ought not to be encouraged by our courts.

It therefore follows that the trial court erred in parts of its oral charge to which exceptions were reserved, raising the above question, and in giving the charge requested by plaintiff, as follows: "If the jury believe from the evidence that Sam Jones, at the time of the alleged conversation at the bank between Tatum and Williamson, was interested personally in the transaction adversely to the plaintiff bank, then no notice can be imputed to plaintiff, and the jury must find for the plaintiff."

There was also error in refusing some of the defendant's requested charges, which asserted the converse of the one given for the plaintiff.

Most all other questions of importance to this appeal were settled on the former appeal.

(11) If the deposits of Williamson were special, and could not therefore be applied to the payment of these notes sued on, as suggested by appellee in argument, then this should have been set up in the replications to the pleas which set up the discharge of defendant by failure to so apply the deposits after the notes were due.

For these errors, the judgment is reversed, and the cause is remanded.

The judgment being reversed on the main appeal, consideration of the cross-appeal is not necessary, and cross-appellant can take nothing by reason of the cross-appeal.

ANDERSON, C. J., and SOMERVILLE and THOMAS, JJ., concur.